UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALFREDO MORENO COCOLETZI, EDGAR
MONTEROSO, GILBERTO DARIO RAMIREZ
RAMOS, CRISTIAN FREDY VILLAR MEDINA
and GERMAN TORRES,

Plaintiffs,

-against-

FAT SAL'S PIZZA II, CORP. (d/b/a FAT SAL'S
PIZZA), FAT SAL'S PIZZA III, CORP. (d/b/a FAT
SAL'S PIZZA), FAT SAL'S PIZZA, IV CORP.
(d/b/a FAT SAL'S PIZZA), SHELBY PIZZA
CORP. (d/b/a FAT SAL'S PIZZA), TWELVE
THIRTEEN AVE A CORP. (d/b/a FAT SAL'S
PIZZA), AMIR ORLY and ELDAD SHAAR,

Defendants.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/06/2018

15cv02696 (CM) (DF)

**REPORT AND
RECOMMENDATION**

## TO THE HONORABLE COLLEEN MCMAHON, U.S.D.J.:

On April 7, 2015, three of the currently named plaintiffs in this action, Alfredo Moreno
Cocoletzi ("Cocoletzi"), Edgar Monteroso ("Monteroso"), and Gilberto Dario Ramirez Ramos
("Ramos"), purportedly on behalf of themselves and others similarly situated, commenced this
putative collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201
*et seq.*, and the New York Labor Law (the "NYLL"), Sections 190 *et. seq.* and Sections 650 *et
seq.*, to recover unpaid wages, liquidated and statutory damages, prejudgment interest, and
attorneys' fees and costs from two then-named corporate defendants, Fat Sal's Pizza Corp. and
Fat Sal's Pizza II, Corp. (both allegedly doing business as Fat Sal's Pizza), and two individual
defendants Amir Orly ("Orly"), and Eldad Shaar ("Shaar") (Orly and Shaar, the "Individual
Defendants," and, collectively with Fat Sal's Pizza and Fat Sal's Pizza II, the "Original
Defendants")). (Dkt. 1.)

The Original Defendants each appeared in this action through counsel and answered the Complaint (*see* Dkt. 11), but they terminated their counsel of record on September 1, 2015 (Dkt. 30).  While the Individual Defendants continued to defend the action – with Shaar proceeding *pro se* (*see* Dkt. 31) and Orly retaining new counsel (*see* Dkt. 35) – Fat Sal's Pizza Corp. and Fat Sal's Pizza II, Corp. did not retain new counsel to represent them in the action.

On November 7, 2016, however, Plaintiffs filed an Amended Complaint adding two more plaintiffs, Cristian Freddy Villar Medina ("Medina") and German Torres ("Torres") (collectively, with the originally named plaintiffs, "Plaintiffs"), dropping defendant Fat Sal's Pizza Corp., and adding four new defendants:  Fat Sal's Pizza III, Corp.,  Fat Sal's Pizza IV, Corp., Shelby Pizza Corp., and Twelve Thirteen Ave A Corp. (all allegedly doing business as Fat Sal's Pizza) (these four new defendants, together with Fat Sal's Pizza II., Corp., the "Corporate Defendants," and, collectively with the Individual Defendants, "Defendants").  (*See* Amended Complaint, dated Nov. 7, 2016 ("Am. Compl.") (Dkt. 51).)  After Defendants failed to respond to the Amended Complaint or to Plaintiffs' motion for a default judgment (Dkt. 100), the Honorable Colleen McMahon, U.S.D.J., entered a default judgment against Defendants on April 23, 2018 (Dkt. 115), and referred this matter to this Court to conduct an inquest concerning Plaintiffs' damages (Dkt. 116).

For the reasons that follow, I recommend that Defendants be held jointly and severally liable to Plaintiffs for:  (1) damages in the amount of $494,857.29; (2) prejudgment interest in the amount of $132,087.23, plus additional prejudgment interest to be calculated by the Clerk of Court from June 8, 2018 (the date of Plaintiffs' inquest filing) to the date of entry of final judgment; and (3) attorneys' fees and costs in the amounts of $40,492 and $400, respectively.

## BACKGROUND

### A.    Factual Background

Given Defendants' default, the well-pleaded allegations contained in the Amended Complaint, dated November 7, 2016 ("Am. Compl.") (Dkt. 51), as summarized below, are deemed to be true, except for those allegations relating to damages.  (*See* Discussion *infra*, at Section I(A); *see also, e.g.*, *Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011).)  The facts included herein are taken from the Amended Complaint, in addition to Plaintiffs' Proposed Findings of Fact and Conclusions of Law (*See* Proposed Findings of Fact and Conclusions of Law, dated June 8, 2018 ("Proposed Findings") (Dkt. 118) and the Declarations submitted by each of the Plaintiffs in support of Plaintiffs' motion for default judgment.  (*See* Declaration of Alfredo Moreno Cocoletzi in Support of Motion for Default Judgment, dated Dec. 28, 2017 ("Cocoletzi Decl.") (Dkt. 101); Declaration of Edgar Monteroso in Support of Motion for Default Judgment, dated Jan. 2018 ("Monteroso Decl.") (Dkt. 102); Declaration of Gilberto Dario Ramirez Ramos in Support of Motion for Default Judgment, dated Dec. 28, 2017 ("Ramirez Decl.") (Dkt. 103); Declaration of Cristian Fredy Villar Medina in Support of Motion for Default Judgment, dated Dec. 28, 2017 ("Villar Decl.") (Dkt. 104); Declaration of German Torres in Support of Motion for Default Judgment, dated Dec. 28, 2017 ("Torres Decl.") (Dkt. 105).)[1]

Plaintiffs plead that they were employed as delivery workers at four pizzerias owned, operated, or controlled by Defendants under the name "Fat Sal's Pizza."  (Am. Compl. ¶¶ 1-3.)

---

[1] This Court notes that the Declarations of Cocoletzi, Ramirez, Villar, and Torres are all dated December 28, 2018, but this Court assumes that, in each case, this is a typographical error, and that the intended date was December 28, *2017*, given that the Declarations were all filed in January of 2018.  This Court also notes that Monteroso did not mark the specific date in January on which he signed his Declaration.  This Court will consider the substantive content of the Declarations notwithstanding these date issues.

The restaurants were located at:  (1) 1603 Second Avenue, New York, NY 10028 (the "Second Avenue Location," operated by Fat Sal's Pizza IV, Corp. and Shelby Pizza Corp.); (2) 510 Ninth Avenue, New York, NY 10018 (the "Ninth Avenue Location," operated by Fat Sal's Pizza II, Corp.); (3) 217 West 14th Street, New York, NY 10011 (the "14th Street Location," operated by Fat Sal's Pizza III Corp.); and (4) 201 Avenue A, New York, NY 10019 (the "Avenue A Location," operated by Twelve Thirteen Ave. A Corp.).  (*Id.* ¶ 2.)  Plaintiffs allege that Shelby Pizza Corp. took over operations from Fat Sal's Pizza IV, Corp. at the Second Avenue location in or about late 2010 or early 2011, and that there has been substantial continuity in the business operations at this location since that time.  (*Id.* ¶ 23.)  Plaintiffs further allege that Orly and Shaar serve as owners, principals, or agents of the Corporate Defendants, and that they set employee schedules, maintain employee records, and have the authority to hire and fire employees. (*Id.* ¶¶ 3, 24, 25.)

Plaintiffs allege that, while they were ostensibly employed as delivery workers, they were "required to spend a considerable part of their work day performing non-tipped, non-delivery duties."  (*Id.* ¶ 4.)  These duties included:

> cleaning, sweeping and mopping the restaurant after guests leave, vacuuming, making pizza dough, storing the pizza dough, making pizza sauce, shredding cheese, peeling and preparing shrimp, building pizza boxes, sweeping the basement, stocking the basement with food and soda deliveries, taking out the garbage, dishwashing, wiping down tables, cutting and breading chicken and eggplant, chopping vegetables, cooking sausages, cutting ham, cleaning out the drains in the kitchen sinks and cleaning the bathrooms.

(*Id.*)  Additionally, Plaintiffs allege that, throughout their employment, they worked for more than 40 hours per week.  (*Id.* ¶¶ 5, 129.)  They allege that they were not paid for all hours worked; were not paid the minimum wage or even the statutory tip-credited rate (if – which they

4

dispute – Defendants were permitted to compensate them at that lower rate); were not properly compensated for overtime; and were not paid "spread of hours" pay.  (*Id.* ¶¶ 5, 7, 9, 129, 131, 132, 135, 139.)  They further allege that Defendants did not inform them that their tips would be credited toward payment of the minimum wage, did not post notices or otherwise notify them "regarding the applicable wage and hour requirements of the FLSA and NYLL," and did not provide them with wage statements at the time they were paid.  (*Id.* ¶¶ 140, 141, 147, 148.) Plaintiffs allege that Defendants engaged in these practices (thereby violating the FLSA and the NYLL) intentionally, willfully, and in bad faith, in an attempt to minimize labor costs. (*Id.* ¶¶ 144, 145, 146.)

Plaintiffs' respective allegations concerning the specific hours they worked and the pay they received are set forth in greater detail below, in connection with this Court's assessment of each of their claimed damages.  (*See* Discussion, *infra*, at Section II.)

### B.    Procedural History

As noted above, plaintiffs Cocoletzi, Monteroso, and Ramirez commenced this action by filing a Complaint as a putative FLSA collective action on April 7, 2015.  (Dkt. 1.)  The Original Defendants, through their counsel, filed an Answer on June 3, 2015, denying most of the allegations in the Complaint.  (Dkt. 11.)  The matter was stayed on June 26, 2015, pending the resolution of Orly's bankruptcy proceedings (Dkt. 16), but the stay was lifted on August 5, 2015 as to all of the Original Defendants except Orly (Dkt. 24).

On September 16, 2015, upon being informed that the Original Defendants had terminated their counsel in this action, Judge McMahon granted counsel for those defendants leave to withdraw and set a deadline of November 25, 2015 for new counsel to appear. (Dkt. 30.)  Shaar filed a Notice of *Pro Se* Appearance on November 20, 2015 (Dkt. 31), although

no new counsel appeared for the Corporate Defendants by the deadline that had been set by the Court. On December 16, 2015, the Bankruptcy Court lifted the automatic stay against Orly (Dkts. 32-33), and new counsel entered an appearance for Orly on March 15, 2016 (Dkt. 35).

At a pretrial conference on May 20, 2016, Plaintiffs' counsel stated that the three then-named plaintiffs wished to add two more plaintiffs to the case and then to proceed with the claims of only those five individuals, rather than as a collective action. (Dkt. 40.) Subsequently, on November 7, 2016, as noted above, Plaintiffs filed an Amended Complaint that added Medina and Torres as plaintiffs, and that further modified the caption to drop defendant Fat Sal's Pizza Corp., and instead to name the current five Defendants: Fat Sal's Pizza II, Corp.; Fat Sal's Pizza III, Corp.; Fat Sal's Pizza IV, Corp.; Shelby Pizza Corp.; and Twelve Thirteen Ave. A. Corp. (*See* Dkt. 51.) Upon Defendants' failure to answer the Amended Complaint, Plaintiffs filed Requests for Certification of Default as to the Corporate Defendants on February 6, 2017 (Dkt. 79), and as to the Individual Defendants on July 26, 2017 (Dkt. 97). The Clerk of Court issued the requested certifications on the days on which they were requested. (*See* Dkts. 80-84, 98-99.)[2]

On January 10, 2018, Plaintiffs moved for a default judgment against all Defendants. (Dkt. 100.) When Defendants did not respond to the motion, Judge McMahon granted it on April 23, 2018 (Dkt. 115) and referred the case to this Court for an inquest on damages (Dkt. 116). On May 11, 2018, this Court issued a Scheduling Order for a Damages Inquest.

---

[2] Orly advised this Court through an Affidavit sworn to March 4, 2017, that he did not wish to defend himself in this case and instead intended to accept a default judgment. (*See* Dkt. 88.) Orly reiterated this during a telephone conference conducted by this Court on March 7, 2017, at which this Court sought to ensure that his decision was informed and voluntary. (See Dkt. 91.)

(Dkt. 117.)  Plaintiffs' counsel submitted Proposed Findings on June 8, 2018 (Dkt. 118), but, to date, Defendants have filed no response.

## DISCUSSION

### I.   APPLICABLE LEGAL STANDARDS

#### A.   Default Judgment

"[D]efault is an admission of all well-pleaded allegations against the defaulting party." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (citation omitted).  Although a "'default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability,'" it does not reach the issue of damages.  *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)).  In conducting a damages inquest, the Court accepts as true all of the factual allegations of the complaint, except those relating to damages.  *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted).

A plaintiff must therefore substantiate a claim with evidence to prove the extent of damages.  *See Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must introduce evidence to prove damages suffered and the court will then determine whether the relief flows from the facts (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974))).  The burden is on the plaintiff to "introduce sufficient evidence to establish the amount of damages with reasonable certainty," *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, No. 12cv01369 (LGS) (AJP), 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013), *report and recommendation adopted*, 2013 WL 4505255 (Aug. 23, 2013) (citations omitted), although the plaintiff is entitled to all reasonable inferences in its favor based on the evidence submitted, *see U.S. ex rel. Nat'l Dev. & Constr. Corp. v. U.S. Envtl. Universal Servs., Inc.*, No. 11cv730 (CS), 2014 WL

4652712, at *3 (S.D.N.Y. Sept. 2, 2014) (adopting report and recommendation).  Where a defaulting defendant has not made any submission on a damages inquest, the Court must assess whether the plaintiff has provided a sufficient basis for the Court to determine damages, *see Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997), and the Court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs alone, *see, e.g.*, *Garden City Boxing Club, Inc. v. Hernandez*, No. 04cv2081 (LAP) (DF), 2008 WL 4974583, at *4-5 (S.D.N.Y. Nov. 24, 2008) (determining the adequacy of plaintiff's damages claim based solely on its submitted proofs where defendant neither responded to plaintiff's submissions with respect to its claimed damages nor requested a hearing).

Regardless of the submitted proofs or testimony, though, damages awarded upon a defendant's default "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  The Second Circuit has interpreted the Rule 54(c) requirement to turn on the defendant's receipt of adequate notice of the scope of damages on the face of the plaintiff's complaint.  *Silge v. Merz*, 510 F.3d 157, 161 (2d Cir. 2007) ("The timing and method of such notice (*i.e.*, that it come before the decision to default and be evident from the face of the complaint) are both critical to the analysis").  While Rule 54(c) precludes an award of damages that exceeds the amount demanded in the plaintiff's complaint, *Robinson v. Holder*, No. 07cv5992 (DLC), 2008 WL 2875291, at *7 (S.D.N.Y. July 22, 2008) (rejecting the plaintiff's proposed measure of damages for a legal malpractice claim where it exceeded the amount demanded in the amended complaint), "this does not mean that Rule 54(c) precludes damages where a complaint fails to articulate a sum certain in its ad damnum clause," *Pauta v. Aena Mech Corp.*, No. 11cv6374 (WHP), 2014 WL 3855025, at *1 (S.D.N.Y. July 25, 2014);

*see also Capgemini U.S., LLC v. EC Manage, Inc.*, No. 10cv2486 (GBD) (HPD), 2012 WL

5931837, at *6 (S.D.N.Y. Nov. 7, 2012) (where ad damnum clause requested $1,000,000 "plus

interest," "the [c]omplaint put the defendants on notice that they could be liable for an amount in

excess of $1,000,000 once interest was computed," and therefore interest award would not

violate Rule 54(c)), *report and recommendation adopted*, 2012 WL 5938590 (Nov. 27, 2012)).

Indeed, "[c]ourts may award damages in the absence of an ad damnum clause articulating a sum

certain, so long as those damages do not depart from the type of relief sought in the complaint."

*Pauta*, 2014 WL 3855025, at *2 (although the plaintiff did not demand a sum certain in his

complaint, he was entitled to the specific amounts sought in his motion for default judgment

given that, in his complaint, "he clearly identified the types of damages he was seeking").

 While the Court may hold a hearing to assess the amount of damages that should be

awarded on default, *see* Fed. R. Civ. P. 55(b)(2) (court may conduct hearings on damages as

necessary), the Second Circuit has consistently held that "[b]y its terms, [Rule] 55(b)(2) leaves

the decision of whether a hearing is necessary to the discretion of the district court," *Fustok v.

ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *accord Tamarin v. Adam Caterers,

Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (judges are given "much discretion" to determine whether an

inquest hearing need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991)

(Fed. R. Civ. P. 55(b)(2) "allows but does not require . . . a hearing" (citations omitted)).

  **B.** **Burden of Proof in Wage Cases, Where Defendants'**
    **Records Are Inadequate or Have Not Been Produced**

 In an FLSA case, the burden falls on the plaintiff-employee to demonstrate "'that he

performed work for which he was not properly compensated.'" *Santillan*, 822 F. Supp. 2d at

293-94 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded on

other grounds by* The Portal-to-Portal Act of 1947, 29 U.S.C. § 251, *et seq.*).  As noted by the

Supreme Court, however, employees "'seldom keep . . . records [of hours worked] themselves,'" *id.*, at 294 (quoting *Anderson*, 328 U.S. at 687) (alteration in original), and, "'even if they do, the records may be and frequently are untrustworthy,'" *id.* (quoting *Anderson*, 328 U.S. at 687). Employers, on the other hand, have a duty to maintain such records pursuant to Section 11(c) of the FLSA, and, thus, the "easiest way for an FLSA plaintiff to discharge his or her burden of proof is, generally, to 'secur[e] the production of such records' from the employer." *Id.* (quoting *Anderson*, 328 U.S. at 687) (alteration in original).

A defaulting defendant "deprive[s] the plaintiff of the necessary employee records required by the FLSA, thus hampering [the] plaintiff's ability to prove his damages." *Id.* As a result, where a defendant defaults, a plaintiff may meet his burden of proof "by relying on recollection alone" to establish that he "performed work for which he was improperly compensated." *Id.*, at 293-94 (finding, in a default context, that plaintiff provided a "sufficient basis for [the] determination of damages" where he "submitted a sworn declaration containing information as to hours worked and rates of pay based on estimation and recollection," even where the plaintiff's submission was "general and not detailed" (internal quotation marks and citations omitted)). "Moreover, in the absence of rebuttal by defendants . . . [the employee's] recollection and estimates of hours worked are presumed to be correct." *Id.* (internal quotation marks and citations omitted); *see also Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997) (where an employer fails to produce evidence regarding the amount of work that the employee performed or evidence to negate "the reasonableness of the inference to be drawn from the employee's evidence," the court may "award damages to the employee, even though the result be only approximate." (quoting *Anderson*, 328 U.S. at 687-88)).

Under New York law, courts actually "go[] one step further and require[] that employers who fail to maintain the appropriate records 'bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Santillan*, 822 F. Supp. 2d at 294 (quoting N.Y. Lab. Law § 196-a).

### C.   FLSA and NYLL Statutes of Limitations

Under the FLSA, the applicable statute of limitations is generally two years, except that, where the employer is found to have committed a "willful" violation of the law, the limitations period is extended to three years. 29 U.S.C. § 255(a).  Willfulness under the FLSA is found where an employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  "[A] defendant's default, in itself, may suffice to support a finding of willfulness." *Santillan*, 822 F. Supp. 2d at 297.  The applicable limitations period for NYLL claims is six years.  N.Y. Lab. Law § 663(3).

### D.   Damages Available Under the FLSA and NYLL for Minimum Wage and Overtime Pay Violations

Pursuant to the FLSA, an employee must be paid, at least, the federal statutory minimum wage for the first 40 hours that he or she worked in a given work week.  29 U.S.C. § 206(a). Moreover, an employee is entitled to be paid for overtime hours (*i.e.*, hours exceeding 40 per week) at a "rate not less than one and one-half times the regular rate at which [the employee] is employed." *Id.* § 207(a)(1); *see also, e.g.*, *Chun Jie Yin v. Kim*, No. 07cv1236 (DLI) (JO), 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008) (adopting report and recommendation and noting that "[t]he FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (150 percent of the statutory minimum wage) for hours worked above 40 hours per week" (citations omitted)).  A plaintiff with a successful minimum-wage claim under the FLSA

is entitled to recover damages up to, but not exceeding, these statutory amounts.  *See Santillan*, 822 F. Supp. 2d at 293.  Since July 24, 2009, the federal minimum wage has been $7.25 per hour, 29 U.S.C. § 206(a)(1)(C), and the corresponding overtime pay requirement (*i.e*., 150 percent of that rate) has therefore been $10.875 per hour.

Under the NYLL, a prevailing plaintiff is entitled to recover "the full amount of wages owed, not just the statutory minimum wage for the hours worked."  *Chun Jie Yin*, 2008 WL 906736, at *4; *see also* N.Y. Lab. Law § 198(3) ("All employees shall have the right to recover full wages . . . accrued during the six years previous to the commencing of such action.").  Where, however, a plaintiff-employee was not owed more than the minimum wage, then the statutory rates come into play.  For the periods relevant to this action, the statutory minimum wage in New York State was the following:  as of the relevant time period prior to July 24, 2009, $7.15 per hour; as of July 24, 2009, $7.25 per hour; as of December 31, 2013, $8.00 per hour; as of December 31, 2014, $8.75 per hour.  N.Y. Lab. Law § 652(2); 29 U.S.C. § 206(a)(1)(C).  The NYLL, like the FLSA, mandates payment at one and one-half times the regular normal rate for each hour worked by an employee in excess of 40 hours per week.  12 N.Y.C.R.R. § 146-1.4.

Under the regulations interpreting the NYLL, an employer may not take a tip credit toward paying an employee the minimum wage when the employee's non-tipped duties exceed 20 percent or two hours of each workday, whichever is less. 12 N.Y.C.R.R. §§ 146-1.3, 146-3.4. Additionally, an employer must notify an employee that it is taking a tip credit toward payment of the minimum wage in order to do so.  12 N.Y.C.R.R. § 146-1.3.

Where an employee earns a fixed salary, courts apply the same approach to determining the employee's "regular rate" under the FLSA and the NYLL for purposes of calculating the employee's legal overtime rate.  The FLSA specifically states that, "[i]f the employee is

employed solely on a weekly basis, the regular hourly rate of pay, on which time and a half must

be paid, is computed by dividing the salary by the number of hours which the salary is intended

to compensate."  29 C.F.R. § 778.113(a).  Courts have recognized that, under the FLSA, there is

a "rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties

have an alternate agreement."  *Pinovi v. FDD Enterprises, Inc.*, No. 13cv2800 (GBD) (KNF),

2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015); *see also Giles v. City of New York*, 41 F.

Supp. 2d 308, 316-17 (S.D.N.Y. 1999) ("The fact that an employee regularly works 60 or more

hours does not, without more, indicate that the employee's weekly salary was intended to include

the FLSA overtime premium for all hours in excess of 40.").  Courts in this District have

extended this rebuttable presumption to apply under the NYLL, as well as the FLSA.  *See, e.g.*,

*Pastor v. Alice Cleaners, Inc.*, No. 16cv7264 (JLC), 2017 WL 5625556, at *2 (S.D.N.Y.

Nov. 21, 2017); *Pinovi*, 2015 WL 4126872, at *4; *Amaya v. Superior Tile and Granite Corp.*,

No. 10cv4525 (PGG), 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012).  "[T]he employer can

rebut the presumption by showing an employer-employee agreement that the salary cover a

different number of hours."  *Giles*, 41 F. Supp. 2d at 317.  Absent evidence that the employer

and employee understood that the fixed weekly salary included overtime hours, a court will find

that the weekly salary covered only the first 40 hours.  *See Pastor*, 2017 WL 5625556, at *2-3;

*Pinovi*, 2015 WL 4126872, at *4-5; *Amaya*, 2012 WL 130425, at *9; *cf. Doo Nam Yang v. ACBL

Corp.*, 427 F. Supp. 2d 327, 335, 338 (S.D.N.Y. 2005) (finding that the FLSA's rebuttable

presumption had been overcome where the plaintiff conceded that his salary covered 50 hours of

work).

      Where an employee does not earn a fixed weekly salary, and where, as in this case, the

employee works in the hospitality industry, the court's determination of the employee's regular

hourly rate will differ under the FLSA and the NYLL.  Under the FLSA, the regular rate is determined by "dividing [the] employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked."  *Romero v. Anjdev Enters., Inc*., No. 14cv457 (AT), 2017 WL 548216, at *10 (S.D.N.Y. Feb. 10, 2017) (alteration omitted) (citing 29 C.F.R. § 778.109).  Under regulations implementing the NYLL, however, "the regular rate of pay of an employee in the hospitality industry . . .  is calculated 'by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week.'"  *Soto v. Los Corbaticas Deli Grocery II Corp*., No. 18cv3602 (JGK) (JLC), 2018 WL 4844018, at *4 (S.D.N.Y. Oct. 5, 2018) (citing *Java v. El Aguila Bar Rest. Corp*., No. 16cv6691 (JLC), 2018 WL 1953186, at *10 (S.D.N.Y. Apr. 25, 2018) (quoting 12 NYCRR § 146-3.5(b))).

Although a plaintiff may be "entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the [NYLL], [he or she] may not recover twice."  *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08cv3725 (DC), 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010).  Instead, "[w]here a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages."  *Wicaksono v. XYZ 48 Corp.*, No. 10cv3635 (LAK) (JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), *report and recommendation adopted*, 2011 WL 2038973 (May 24, 2011) (internal quotation marks and citation omitted).  Accordingly, when calculating minimum-wage damages, the higher of either the FLSA or the New York minimum wage should be used for any period covered by both statutes.  *Id*., at *3.

**E.      Effect on Wage Calculations Where Employee Has Been
Required To Purchase "Tools-of-the-Trade" or Uniforms**

According to the federal regulations applicable to the FLSA,

> if [there] is a requirement of the employer that the employee must
> provide tools-of-the-trade which will be used in or are specifically
> required for the performance of the employer's particular work,
> there would be a violation of the [FLSA] in any workweek when
> the cost of such tools purchased by the employee cuts into the
> minimum or overtime wages required to be paid him under the
> [FLSA].

29 C.F.R. § 531.35.  Vehicles such as bicycles are considered to be "tools-of-the-trade," if the

particular employees, such as delivery workers, are required to own and use them during the

course of their employment.  *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 257-58

(S.D.N.Y. 2008) (finding that delivery workers' bicycles were considered tools-of-the-trade

because the employer required all delivery workers to own and maintain "vehicular

transportation" as a condition of employment); *see also Guan Ming Lin v. Benihana Nat'l Corp.*,

755 F. Supp. 2d 504, 512 (S.D.N.Y. 2010).

State regulations interpreting the NYLL similarly provide that, "[i]f an employee must

spend money to carry out duties assigned by his or her employer, those expenses must not bring

the employee's wage below the required minimum wage."  12 N.Y.C.R.R. § 146-2.7(c); *see also*

*Yu G. Ke*, 595 F. Supp. 2d at 258 ("[I]n measuring wages we take into account the costs that

plaintiff[] [delivery workers] incurred in purchasing bicycles after they were hired and repairing

them during their employment by defendants.").

With regard to uniforms, "both New York law and federal law require employers to

compensate employees for the purchase and maintenance of required uniforms if the employees'

expenditures for these purposes would reduce their wages to below minimum wage."  *Ayres v.*

*127 Rest. Corp.*, 12 F. Supp. 2d 305, 310 (S.D.N.Y. 1998).  Under New York law, however, with

respect to employment in the hospitality industry, "clothing that may be worn as part of an employee's ordinary wardrobe" is not considered a required uniform.  12 N.Y.C.R.R. § 146-3.10.  Similarly, under the FLSA regulations, a uniform, to qualify as a tool of the trade, must be "specifically required for the performance of the employer's particular work," 29 C.F.R. § 531.35, and therefore cannot "consist of ordinary wardrobe items," *Hernandez v. Spring Rest. Group, LLC*, No. 17cv6084 (AJN), 2018 WL 3962832, at *4 (S.D.N.Y. Aug. 17, 2018) (dismissing tools-of-the-trade claim for pants and shirts where plaintiffs failed to specify whether clothing consisted of ordinary wardrobe items or specially-made clothing items (quoting *Guan Ming Lin*, 755 F. Supp. 2d at 512 (S.D.N.Y. 2010))).

## F.   Spread-of-Hours Pay Pursuant to the NYLL

Under the NYLL (but not the FLSA), in addition to receiving damages for unpaid regular wages and overtime, an employee is entitled to receive "spread-of-hours" pay, which is "one hour's pay at the basic minimum hourly wage rate" for any workday that lasts longer than ten hours.  12 N.Y.C.R.R. § 142-2.4(a); *see also* N.Y. Lab. Law §§ 650 *et seq*.  "Spread of hours compensation is calculated by multiplying the minimum wage by the number of days an employee worked more than ten hours."  *Angamarca v. Pita Grill 7 Inc*., No. 11cv7777 (JGK) (JLC), 2012 WL 3578781, at *8 (S.D.N.Y. Aug. 2, 2012), *report and recommendation adopted*, Dec. 14, 2012 (slip op.).

## G.   New York State Wage Notice Requirements

### 1.   Wage Statements

Pursuant to New York's Wage Theft Prevention Act ("WTPA"), an amendment to the NYLL that was made effective as of April 9, 2011, employers are required to

> 'furnish each employee with a statement with every payment of wages, listing the following' information:  (1) the dates of work

> covered by that payment of wages; (2) the employee's name;
> (3) the employer's name, address, and telephone number;
> (4) the rate or rates of pay and basis thereof; (5) gross wages;
> (6) deductions; (7) allowances, if any, claimed as part of the
> minimum wage; and (8) net wages.

*Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 475 (S.D.N.Y. 2015) (quoting N.Y. Lab.

Law § 195(3)); *see also Baltierra v. Advantage Pest Control Co.*, No. 14cv5917 (AJP), 2015 WL

5474093, at *10-11 (S.D.N.Y. Sept. 18, 2015).

Prior to February 27, 2015, "the WTPA entitled employees to recover statutory damages

for violations of the wage statement requirement of $100 per work week, not to exceed $2,500."

*Baltierra*, 2015 WL 5474093, at *10 (citation omitted); *accord Inclan v. N.Y. Hospitality Grp.,*

*Inc.*, 95 F. Supp. 3d 490, 501 (S.D.N.Y. 2015); *see also* 2010 N.Y. Laws ch. 564 § 7, *amending*

N.Y. Lab. Law § 198(1-d).  By an amendment to the WTPA effective February 27, 2015,

however, the law changed to allow employees to recover wage statement statutory damages of

$250 dollars "for each work *day* that the violations occurred or continue to occur," not to exceed

$5,000.  2014 N.Y. Laws ch. 537 § 2, *amending* N.Y. Lab. Law § 198(1-d) (emphasis

added); *see also Zhang v. Red Mtn. Noodle House Inc.*, No. 15cv628 (SJ) (RER), 2016 WL

4124304, at *6 n.13 (E.D.N.Y. July 5, 2016), *report and recommendation adopted*, 2016 WL

4099090 (Aug. 2, 2016).

### 2.   <u>Wage Notices</u>

In addition, beginning April 9, 2011, the WTPA required employers to provide written

wage notices "on or before February first of each subsequent year of the employee's employment

with the employer."  N.Y. Lab. Law § 195(1-a) (eff. April 9, 2011 to Feb. 26, 2015).  The wage

notice was required to be "in English and in the language identified by each employee as the

primary language of such employee," *id.*, and was required to contain the following information:

> (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any 'doing business as' names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary.

*Salinas*, 123 F. Supp. 3d at 474 (footnote omitted).

From its effective date to February 26, 2015, "the WTPA entitled employees to recover statutory damages for wage notice violations of $50 per work week, not to exceed $2,500." *Baltierra*, 2015 WL 5474093, at *11; *accord Inclan*, 95 F. Supp. 3d at 501-02; *see also* 2010 N.Y. Laws ch. 564 § 7, *amending* N.Y. Lab. Law § 198(1-b).  As of February 27, 2015, these penalties were increased to $50 per workday, not to exceed $5,000. N.Y. Lab. Law § 198(1-b).

### H.  Liquidated Damages Pursuant to the FLSA and NYLL

In addition to allowing recovery for unpaid minimum wages and overtime compensation, the FLSA provides for the recovery of liquidated damages.  *See* 29 U.S.C. § 216(b).  Under the statute, a plaintiff is entitled to recover liquidated damages in an amount equal to the amount of unpaid wages and overtime compensation that the plaintiff was improperly denied, unless the employer demonstrates that it acted in good faith and had a reasonable basis for believing that it had not violated the FLSA.  *See id.* (providing that plaintiff-employees who prevail under either Section 206 or 207 of the FLSA are entitled to recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and . . . an additional equal amount as liquidated damages"); *see also* 29 U.S.C. § 260 (mandating that an employer pay liquidated damages unless the employer demonstrates that he was acting in "good faith" and "had reasonable grounds for believing" that he was not acting in violation of the FLSA);

*Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)

(adopting report and recommendation).

   "As the Second Circuit has observed, 'the employer bears the burden of establishing, by

plain and substantial evidence, subjective good faith and objective reasonableness . . . .  The

burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and double damages are the

norm, single damages the exception.'"  *See Galeana*, 120 F. Supp. 3d at 317 (quoting *Reich*, 121

F.3d at 71 (other internal quotation marks and citations omitted)); *Cao*, 2010 WL 4159391, at *5;

*Yu G. Ke*, 595 F. Supp. 2d at 261; *see also* 29 U.S.C. § 260.

   The NYLL also provides for the recovery of liquidated damages, *see* N.Y. Lab. Law

§ 663(1), and while, prior to April 9, 2011, liquidated damages were awarded at the rate of

25 percent of the unpaid wages, an amendment to the NYLL, effective as of that date, increased

the award to a rate of 100 percent of unpaid wages.  *Wimbush v. L.I.C. Pet Transp. Inc.*,

No. 16cv5363 (PAE) (KNF), 2018 WL 3388296, at *4 (S.D.N.Y. July 12, 2018).  Although

courts within this Circuit were previously split on the question of whether a plaintiff could

recover liquidated damages under both the FLSA and the NYLL, *see Chowdhury v. Hamza

Express Food Corp.*, 666 F. App'x 59, 60 (2d Cir. 2016), the Second Circuit has since clarified

that double recovery is not permitted, *id.*; *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)

(interpreting the NYLL and FLSA as "not allowing duplicative liquidated damages for the same

course of conduct," and holding that "plaintiff should receive the larger of the two liquidated

damages awards").

   I.   **Prejudgment Interest**

   Generally, "[t]he decision to award prejudgment interest is discretionary, and is based on

the need to fully compensate the wronged party, [the] fairness of the award, and the remedial

purpose of the statute involved." *Najnin v. Dollar Mountain, Inc.*, No. 14cv5758, 2015 WL 6125436, at *3 (S.D.N.Y. Sept. 25, 2015) (citation omitted).  Given that FLSA liquidated damages serve a compensatory, rather than punitive, purpose, "there is no need to employ pre-judgment interest to restore [p]laintiffs to a position they would have otherwise enjoyed absent the wage-protection violation." *Id*.  Thus, a plaintiff who recovers liquidated damages under the FLSA is not also entitled to prejudgment interest on his or her FLSA damages.  *See, e.g.*, *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015) ("'It is well settled that in an action for violations of the [FLSA] prejudgment interest may not be awarded in addition to liquidated damages.'" (quoting *Begum v. Ariba Disc., Inc.*, No. 12cv6620 (DLC) (KNF), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015))).  As a result, in an action where both FLSA and NYLL claims are brought, "courts do not award statutory prejudgment interest on any portion of the recovery for which liquidated damages were awarded under the FLSA." *Andrade v. 168 First Ave Restaurant Ltd.,* 14cv8268 (JPO) (AJP), 2016 WL 3141567, at *9 n.7 (S.D.N.Y. June 3, 2016).

Based on a provision added to the NYLL in 2011, however, a plaintiff who recovers liquidated damages under the NYLL is also entitled to prejudgment interest.  *See Hernandez v. Jrpac Inc.*, No. 14cv4176 (PAE), 2016 WL 3248493, at *35 (S.D.N.Y. June 9, 2016) (noting that, under the NYLL, a plaintiff may receive both an "award of prejudgment interest alongside a liquidated damages award" (citing N.Y. Lab. Law § 198(1-a))); *see also Castillo v. RV Transp., Inc.*, No. 15cv0527 (LGS), 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016).  Under the state law, though, "[p]rejudgment interest is calculated . . . on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. East Manor USA Inc.*,

No. 10cv4313 (NG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013) (citation omitted),

*report and recommendation adopted*, 2013 WL 2152176 (May 17, 2013).

"Pursuant to [New York] state law, a successful plaintiff may receive prejudgment

interest at a rate of nine percent per year." *Najnin*, 2015 WL 6125436, at *4; *see also* N.Y.

C.P.L.R. §§ 5001, 5004.  As to the date from which interest should be found to run,

"Section 5001(b) sets forth two methods of calculating prejudgment interest."  *Alvarez v. 215*

*N. Ave. Corp.*, No. 13cv049 (NSR) (PED), 2015 WL 3855285, at *3 (S.D.N.Y. June 19, 2015)

(adopting report and recommendation).

> First, interest may be calculated from 'the earliest ascertainable
> date the cause of action existed,' N.Y. C.P.L.R. § 5001(b).
> However, '[w]here . . . damages were incurred at various times,
> interest shall be computed upon each item from the date it was
> incurred or upon all of the damages from a single reasonable
> intermediate date.'  *Id.*

*Alvarez,* 2015 WL 3855285, at *3.  It is within the Court's "'wide discretion'" to "'determin[e] a

reasonable date from which to award prejudgment interest.'"  *Id.* (quoting *Conway v. Icahn &*

*Co.,* 16 F.3d 504, 512 (2d Cir. 1994)).

### J.   Joint and Several Liability of "Employers" Under the FLSA and NYLL

The FLSA imposes liability on "employers," a group that is "broadly define[d] [to

include] 'any person acting directly or indirectly in the interest of an employer in relation to an

employee.'"  *Doo Nam Yang*, 427 F. Supp. 2d at 342-43 (quoting 29 U.S.C. § 203(d)).  "The

definition of 'employer' is similarly expansive under New York law, encompassing any 'person

employing any [employee].'"  *Id.* (quoting N.Y. Lab. Law §§ 2(6)).  To determine whether a

party qualifies as an "employer" under both statutes' "generous definitions," the relevant inquiry

is "'whether the alleged employer possessed the power to control the workers in question, . . .

with an eye to the economic reality presented by the facts of each case.'" *Id.* (quoting *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir. 1999)).

"[W]hen examining the 'economic reality' of a particular situation," courts will evaluate various factors, none of which, individually, is dispositive. *Id.* These factors include "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* (quoting *Herman,* 172 F.3d at 139). Further, "'[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, [and is therefore] jointly and severally liable under the FLSA for unpaid wages.'" *Id.* (quoting *Moon v. Kwon,* 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002), and finding defendants jointly and severally liable under both the FLSA and the NYLL).

### K.    Attorneys' Fees and Costs

"Under both the FLSA and the NYLL, a prevailing plaintiff may recover [his or] her reasonable attorney's fees and costs." *Najnin*, 2015 WL 6125436, at *4; s*ee* 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a). The Court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation creates a "presumptively reasonable fee" (internal quotation marks omitted; citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2nd Cir. 2008) and *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)).

The party seeking fees bears the burden of demonstrating that its requested fees are reasonable, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984), and must provide the Court with sufficient information to assess the fee application, *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

An attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11. Although the fee applicant has the burden of demonstrating prevailing market rates for comparable work, *see Broome v. Biondi*, 17 F. Supp. 2d 230, 237 (S.D.N.Y. 1997), the Court may also apply its "own knowledge" of rates charged in the community in assessing the reasonableness of the rates sought, *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987). In *Arbor Hill*, the Second Circuit emphasized that the "reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. In assessing whether an hourly rate is reasonable, the Court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the requested rate. *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Where the requested amount of fees is excessive because the number of stated hours is greater than that which should have been required for the work produced, the Court should reduce the stated hours accordingly. *See Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (the time component should not reflect excessive hours). In determining whether an excessive amount of time was expended on the matter, the Court may consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with

23

the litigation, *see Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange*

*Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), as well as "the straightforward nature of the

work performed [and] the relative simplicity of the issues involved," *see Castellanos v. Mid*

*Bronx Cmty. Hous. Mgmt. Corp.*, No. 13cv3061 (JGK), 2014 WL 2624759, at *6

(S.D.N.Y. June 10, 2014) (citations and internal quotation marks omitted).

In addition to the lodestar amount, attorneys' fees may include "'those reasonable out-of-

pocket expenses incurred by attorneys and ordinarily charged to their clients.'"  *LeBlanc-*

*Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted).  These expenses, or

"costs," may include photocopying, travel, telephone costs, and postage, *Kuzma v. Internal*

*Revenue Serv.*, 821 F.2d 930, 933-34 (2d Cir. 1987), as well as filing fees and reasonable process

server fees, *Rosendo v. Everbrighten Inc.*, No. 13cv7256 (JGK) (FM), 2015 WL 1600057, at *9

(S.D.N.Y. Apr. 7, 2015), *report and recommendation adopted*, 2015 WL 4557147 (July 28,

2015).

## II.   <u>PLAINTIFFS' DAMAGES CLAIMS</u>

As a threshold matter, in the consideration of damages, this Court finds that Plaintiffs'

submissions are sufficient to meet their burden of proof to establish, to a reasonable certainty,

their applicable minimum wage, overtime, spread-of-hours, and statutory damages, such that a

hearing here is not required.  *See Fustok*, 873 F.2d at 40 (noting that the district court has the

discretion to determine whether a hearing is necessary).  As noted above, in the context of a

default, where the defendants have neither provided any employment records, nor otherwise

rebutted the plaintiffs' damages claims, it is sufficient for the plaintiffs to rely on their

"recollection alone" to establish the hours they worked and the rates they should have been paid.

*Santillan*, 822 F. Supp. 2d at 294 (internal quotation marks and citations omitted).  In this case,

24

this Court accepts as true, for purposes of this inquest, the well-pleaded factual allegations presented in the Amended Complaint and in the Declarations submitted by each of the five Plaintiffs in support of their motion for a default judgment. These submissions, as summarized in the Proposed Findings, set out each of the Plaintiffs' recollections regarding the hours he worked and the rates of pay he earned for that work.

In addition, this Court has carefully reviewed, and – based on that review – largely relies on the chart annexed to Plaintiffs' Proposed Findings reflecting Plaintiffs' proposed damages calculation. (*See* Exhibit A to Proposed Findings (the "Damages Chart") (Dkt. 118-1).) The Damages Chart details the amount each employee was actually paid per week ("Credited" Weekly Pay), the amount he should have been paid according to the minimum wage rate and overtime wage rate during that period (Lawful Weekly Pay), and the difference between the two (Underpayment Per Week). (*Id.*) The total amount of unpaid wages and overtime is then calculated by multiplying the number of weeks in the pay period at issue by the amount the employee was underpaid per week. (*Id.*) The Damages Chart also details additional amounts Plaintiffs are seeking, including liquidated damages; unpaid spread-of-hours pay and liquidated damages on those amounts; damages for wage notice and wage statement violations; and recovery of tools-of-the-trade expenses. (*Id.*).

The allegations in the Amended Complaint, Plaintiffs' Declarations, the Proposed Findings, and the Damages Chart are sufficient to allow the Court to make a reasonable assessment of damages. Each individual plaintiff's claims for damages is addressed in detail below.

A.     **Plaintiff Alfredo Moreno Cocoletzi**

1.     **Facts**

As set out in the Amended Complaint and the Cocoletzi Declaration, Cocoletzi[3] alleges that he worked for Defendants from 2008 to March 21, 2015, at all four Fat Sal's Pizza locations. (Am. Compl. ¶ 37; Cocoletzi Decl. ¶¶ 2, 5.)  Cocoletzi claims that, although he was ostensibly employed as a delivery worker, he spent over two hours per work day performing non-tipped, non-delivery duties.  (Am. Compl. ¶¶ 39-40; Cocoletzi Decl. ¶ 6.)  He alleges that his hours were as follows:  from approximately April 2009 to December 2010, he typically worked 13.5 hours per day, six days per week, for a total of 81 hours per week, at the Ninth Avenue and 14th Street locations; from approximately December 2010 to January 2013, he typically worked 10.5 hours per day for five days of the week and 13.5 hours on one day of the week, for a total of 66 hours per week, at the Second Avenue location; from approximately January 2013 through February 2013, he typically worked 13.5 hours per day, six days per week, for a total of 81 hours per week, at the Avenue A and Second Avenue locations; from approximately March 2013 to May 2013, he typically worked 13 hours per day, six days per week, for a total of 78 hours per week, at the Second Avenue location; and from approximately May 2013 to March 21, 2015, he typically worked 10.5 hours per day for three days of each week, 13.5 hours per day for two days of each week, and 7.5 hours for one day of each week, for a total of 66 hours per week, at the

_____

[3] Cocoletzi is referred to as "Moreno" in the Amended Complaint, but as "Cocoletzi" in the Proposed Findings.

Second Avenue location.  (Am. Compl. ¶¶ 43-49; Cocoletzi Decl. ¶¶ 9-15.) [4]  He alleges that he

was never given any breaks.  (Am. Compl. ¶ 53; Cocoletzi Decl. ¶ 20.)

Cocoletzi further alleges that he was paid $4.00 per hour from April 2009 to December

2010, and $5.00 per hour from December 2010 to March 21, 2015.  (Am. Compl. ¶¶ 51-52;

Cocoletzi Decl. ¶¶ 17-18.)  He alleges that, throughout his employment, he was paid in cash.

(Am. Compl. ¶ 50; Cocoletzi Decl. ¶ 16.)  He claims that he "was never notified that his tips

were being included as an offset for wages" and that "Defendants did not account for these tips

in any weekly accounting" of his wages.  (Am. Compl. ¶ 54-55; *see* Cocoletzi Decl. ¶ 21.)

Cocoletzi further alleges that he was never notified, in English or in Spanish (his primary

language), of his rate of pay or his employer's regular pay day, and that Defendants did not post

notices or otherwise notify him "regarding overtime and wages under the FLSA and NYLL."

(Am. Compl. ¶¶ 56-57; *see* Cocoletzi Decl. ¶¶ 22-23.)  Cocoletzi also claims that he was

required to purchase tools-of-the-trade, including 10 bicycles for $200 each, 10 helmets for $30

each, and $150 worth of bicycle lights.  (Am. Compl. ¶ 58; Cocoletzi Decl. ¶ 24.).  He also spent

$1,000 on bicycle repairs.  (*Id.*)

## 2. **Damages**

This Court finds Cocoletzi's submissions sufficient to establish that he was not paid

minimum wage, overtime, and spread-of-hours pay as required by law.  As he was not notified

that his tips would be credited toward the minimum wage, and his non-tipped duties exceeded

two hours of each work day, he was entitled to be paid the statutory minimum wage, which at the

time his employment began was $7.15 per hour, and which then increased to $8.75 per hour.

---

[4] Although Cocoletzi began working for Defendants in 2008, he is only entitled to
damages for violations beginning in April 2009 under the NYLL statute of limitations.  N.Y.
Lab. Law § 663(3).

Cocoletzi was also entitled to be paid 150 percent of the statutory minimum wage for the hours

he worked above 40 hours per week.  Instead, he alleges that he was only paid $4.00 per hour for

every hour worked from April 2009 to December 2010 and $5.00 per hour from December 2010

to March 21, 2015.  Given that Cocoletzi was paid below the statutory minimum throughout his

employment by Defendants, Cocoletzi has demonstrated a valid minimum-wage claim.

Moreover, as he was not paid 150 percent of the minimum wage for overtime and was not paid

spread-of-hours pay, he has established claims for damages for overtime and spread-of-hours

compensation, as well.

As the statute of limitations under the NYLL is six years, N.Y. Lab. Law § 663(3),

Cocoletzi may recover damages for nonpayment of minimum wage, overtime, and spread-of-

hours beginning on April 7, 2009, six years prior to the date the Complaint was filed.  After

reviewing the calculations contained in the Damages Chart concerning Cocoletzi's minimum

wage and overtime claims, this Court finds them to be mostly accurate, except for the period

from March 1, 2013 to May 15, 2013, for which Plaintiffs list the overtime rate as $12.00 per

hour, instead of the actual $10.88-per-hour rate for that period.  (*See* Damages Chart.)  Cocoletzi

was thus entitled to only $3,445.75 in overtime wages, instead of the claimed amount of

$3,602.50, during that period.  Adjusting for this error, this Court finds that Cocoletzi should be

awarded $95,147 in damages for unpaid wages and overtime.

Additionally, on the days in which Cocoletzi worked over 10 hours per day, he was

entitled to one additional hour's pay at the minimum wage rate.  *See* 12 N.Y.C.R.R. § 142-2.4.

Plaintiffs have calculated this unpaid spread-of-hours pay by multiplying the number of spread-

of-hours days per week (*i.e.*, the number of days Cocoletzi worked over 10 hours) by the number

of weeks in the pay period by the minimum wage.  (*See* Damages Chart.)  After reviewing the

calculations, this Court finds them to be accurate, entitling Cocoletzi to an award of $13,057.75 in unpaid spread-of-hours compensation.

As discussed above, both the FLSA and the NYLL also provide for the recovery of liquidated damages.  Indeed, both statutes require this Court to award liquidated damages to a prevailing plaintiff, unless the defendant employer demonstrates that it acted in good faith or had a reasonable basis to believe that it was acting in compliance with the law.  (*See* Discussion, *supra*, at Section I(H).)  Given Defendants' default, they have not met their burden of proving that they acted in good faith, *see Galeana*, 120 F. Supp. 3d at 317, and thus liquidated damages are available under the provisions of both statutes.  29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).  The Court should award damages under "whichever . . . statute results in the higher award" for Plaintiffs.  *Morales v. Mw Bronx, Inc.*, No. 15cv6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016).

Here, Cocoletzi seeks liquidated damages under the NYLL (Proposed Findings ¶ 28), which entitles him to liquidated damages in an amount equal to 25 percent of his minimum wage, overtime, and spread-of-hours damages for the period preceding April 9, 2011, and 100 percent of such damages incurred thereafter.  *See* N.Y. Lab. Law § 663(1).  Having verified the accuracy of Plaintiffs' calculation of Cocoletzi's liquidated damages for unpaid spread-of-hours compensation (*see* Damages Chart), this Court finds that he should be awarded $9,671.50 in liquidated damages for unpaid spread-of-hours compensation.  With respect to Plaintiffs' calculation of Cocoletzi's liquidated damages for unpaid wages and overtime, while it is mostly correct, this Court notes that Plaintiffs applied the 25 percent rate (rather than the 100 percent rate) to Cocoletzi's unpaid wages and overtime earned through April 6, 2012, and not through the correct, earlier date of April 8, 2011.  (*See* Damages Chart).  Plaintiffs' calculation thus

yielded a lower damages amount than that to which Cocoletzi is actually entitled, which this Court has calculated to be $65,164.44. Together with Cocoletzi's liquidated damages for unpaid spread-of-hours compensation, this Court finds that Cocoletzi is entitled to $74,835.94 in total liquidated damages, which is notably higher than the amount of $65,525.44 calculated by Plaintiffs. (*See* Damages Chart.)

Regardless of the discrepancy, the Court is not bound to award Cocoletzi the lower amount sought in the Proposed Findings. As discussed above, Rule 54(c) of the Federal Rules of Civil Procedure provides that a default judgment award may not exceed the amount "demanded in the *pleadings*," Fed. R. Civ. P. 54(c) (emphasis added), and thus only requires that a plaintiff provide notice, in his *complaint*, of the damages he seeks, so as to ensure that a defendant who is considering default can look at the ad damnum clause and satisfy himself that he is willing to suffer a default judgment, *see Pauta*, 2014 WL 3855025, at *1, *Silge*, 510 F.3d at 161. Plaintiffs included a distinct claim, in the ad damnum clause of their Amended Complaint, for "liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL," thereby placing Defendants on notice, through their pleadings, that they intended to seek the full extent of available liquidated damages for each of the Plaintiffs. While their calculation of Cocoletzi's liquidated damages in their inquest submission produced an amount less than this Court's calculation, their proposed amount was submitted after Defendants made the decision to default, and after a default judgment had been entered against them. The Court therefore is not required by Rule 54(c) to limits its award of liquidated damages to the amount sought in the Proposed Findings, and may instead grant an award consistent with its own calculation. This Court therefore recommends that Cocoletzi be awarded $74,835.94 in liquidated damages, which

is comprised of $65,164.44 for unpaid wages and overtime and $9,671.50 for unpaid spread-of-hours compensation.

Cocoletzi also seeks prejudgment interest on his awards for unpaid minimum and overtime wages and spread-of-hours compensation, which together constitute a principal amount of $108,204.75.  (*See* Proposed Findings ¶¶ 33-34.)  As set out above, a plaintiff is entitled to prejudgment interest on damages under the NYLL at a rate of nine percent per year.  *Najnin*, 2015 WL 6125436, at *4; *see also* N.Y.C.P.L.R. §§ 5001, 5004.  Here, given that damages were incurred at various times, prejudgment interest may be computed from a single reasonable intermediate date, *Alvarez*, 2015 WL 3855285, at *3, which Plaintiffs propose as March 30, 2012 (Proposed Findings ¶ 34).  This Court agrees with Plaintiffs' proposed date, and accordingly recommends that Cocoletzi be awarded prejudgment interest of nine percent on the amount of $108,204.75, from the date of March 30, 2012 up to the date of Plaintiffs' inquest submissions (June 8, 2018).  This would result in an award of prejudgment interest of $60,324.89 ($108,204.75 x .09 x (2,261/365)).  This Court further recommends that the Clerk of Court calculate additional prejudgment interest at the rate of nine percent per annum from June 8, 2018 to the date that final judgment is entered.

Cocoletzi additionally seeks, and has established that he is entitled to, statutory damages for Defendants' failure to provide him with wage statements in violation of the WTPA required by the NYLL.  (*See* Proposed Findings ¶ 26.)  As Cocoletzi worked well over 25 weeks during this period (*see* Cocoletzi Decl. ¶ 5), he is entitled to the maximum amount of $2,500 in statutory damages for the wage statement violations.[5]

---

[5] This Court notes that Cocoletzi is not seeking damages for any alleged failure by Defendants to provide wage notices.  (*See* Proposed Findings ¶ 26.)

Cocoletzi also seeks damages for tools-of-the-trade totaling $3,450, which is stated to include the cost of 10 bicycles, 10 helmets, bicycle lights, and bicycle repairs.  (*See* Cocoletzi Decl. ¶ 24; Proposed Findings ¶ 5; Damages Chart.)  Cocoletzi has not supplied any receipts or documentation to support these purchases, but this Court may accept Cocoletzi's statement, made under penalty of perjury, that he made these purchases as a requirement of his employment and that the costs were the amounts stated.  This Court, however, has no basis for finding that Cocoletzi should be reimbursed for 10 bicycles and 10 helmets, in the absence of any showing, testimonial or otherwise, that he needed to acquire multiple bicycles and helmets to perform his assigned job.  Cocoletzi has not, for example, explained in his Declaration that any of the bicycles or helmets were lost, stolen, or rendered inoperable during the course of his employment.  In the absence of any such showing, this Court recommends that Cocoletzi be awarded the cost of one bicycle ($200), one helmet ($30), bicycle lights ($150), and bicycle repairs ($1,000), for a total of $1,380 in tools-of-the-trade damages.[6]

Therefore, this Court recommends that Cocoletzi be awarded $186,920.69 in damages, plus $60,324.89 in prejudgment interest, with additional prejudgment interest to be calculated by the Clerk of Court.

## B.     Plaintiff Edgar Monteroso

### 1.     Facts

As set out in the Amended Complaint and the Monteroso Declaration, Monteroso alleges that he worked for Defendants from approximately June 2011 to January 2012, and from

---

[6] According to the Damages Chart, Plaintiffs do not seek to adjust their unpaid wages upward by the amount spent on tools-of-the-trade.  Rather, they seek damages for tools-of-the-trade as a separate category.  The result is that they are not seeking, nor does this Court recommend awarding, any liquidated damages based on their tools-of-the-trade claims.

approximately February 5, 2015 to March 3, 2015, at the Second Avenue Location.  (Am. Compl. ¶ 59; Monteroso Decl. ¶¶ 2, 5.)  Like Cocoletzi, Monteroso claims that, although he was ostensibly employed as a delivery worker, he spent over two hours per work day performing non-tipped, non-delivery duties.  (Am. Compl. ¶¶ 60-61; Monteroso Decl. ¶ 6.)  During both of his periods of employment at Fat Sal's Pizza, he allegedly worked 13 hours per day, six days per week, for a total of 78 hours per week.  (Am. Compl. ¶¶ 66-67; Monteroso Decl. ¶ 9.) Monteroso further alleges that he was never given any breaks.  (Am. Compl. ¶ 70; Monteroso Decl. ¶ 13.)

Monteroso alleges that he was paid $5.00 per hour, in cash, throughout his employment, and that he was not provided with a statement of wages when he was paid.  (Am. Compl. ¶¶ 68-69, 73; Monteroso Decl. ¶¶ 10-11.)  Monteroso also alleges that he "was never notified . . . that his tips were being included as an offset for wages" and that "Defendants did not account for these tips in any daily or weekly accounting" of his wages.  (Am. Compl. ¶¶ 71-72; *see* Monteroso Decl. ¶ 14.)  Additionally, Monteroso states that he was never notified, in English or in Spanish (his primary language), of his rate of pay or his employer's regular pay day, and that Defendants did not post notices or otherwise notify him "regarding overtime and wages under the FLSA and NYLL."  (Am. Compl. ¶¶ 74-75; *see* Monteroso Decl. ¶ 16.)  Finally, Monteroso alleges that he was required to purchase, as tools-of-the-trade, two bicycles, one of which cost $800 and the other of which cost $500.  (Am. Compl. ¶ 76; Monteroso Decl. ¶ 17.)

### 2.   Damages

This Court finds Plaintiffs' submissions sufficient to establish that Monteroso was not paid minimum wage, overtime, and spread-of-hours pay in accordance with relevant law.  As he was not notified that his tips would be credited toward the minimum wage, and his non-tipped

duties exceeded two hours of each work day, Monteroso was entitled to be paid the statutory minimum wage, which was $7.25 per hour during his first period of employment by Defendants and $8.75 per hour during his second period of employment.  He was also entitled to be paid 150 percent of the statutory minimum wage for the hours he worked above 40 hours per week. Instead he contends, like Cocoletzi, that he was only paid $5.00 per hour, for every hour worked. Given that he was paid below the statutory minimum wage throughout his employment, Monteroso has demonstrated a valid minimum-wage claim.  Moreover, as he was not paid 150 percent of the minimum wage for overtime and was not paid spread-of-hours pay, he has established claims for damages for overtime and spread-of-hours compensation, as well.  After reviewing the Damages Chart, this Court finds the calculations for Monteroso's unpaid wages and overtime to be correct, and recommends that he be awarded $11,545.75 in damages. Additionally, he should be awarded $1,558.50 in damages for unpaid spread-of-hours compensation.

Monteroso also seeks liquidated damages under the NYLL.  (Proposed Findings ¶ 29.) As his employment with Defendants began after April 9, 2011, he is entitled to liquidated damages in an amount equal to 100 percent of his unpaid wage, overtime, and spread-of-hours damages.  *See* N.Y. Lab. Law § 663(1).  Therefore, this Court recommends that Monteroso be awarded $13,104.25 in liquidated damages.

Monteroso also seeks prejudgment interest, at the rate of nine percent per annum, on his awards for unpaid minimum and overtime wages and spread-of-hours compensation, which together constitute a principal amount of $13,104.25.  (*See* Proposed Findings ¶¶ 33, 35.)  Given that Monteroso's employment took place, and thus his damages accrued, during two discrete

periods, this Court will calculate prejudgment interest for each of those time periods separately, up to the date of Plaintiffs' inquest submissions (June 8, 2018), as follows:

| From | To | Midpoint Date | Principal (Unpaid Minimum Wage, Overtime, and Spread-of-Hours) | Calculation (Principal x .09 x Years from Midpoint Date to 6/8/2018) | Interest Owed |
|---|---|---|---|---|---|
| 6/15/2011 | 1/15/2012 | 9/30/2011 | $11,059.25 | $11,059.25 x .09 x (2,443/365) | $6,661.91 |
| 2/5/2015 | 3/3/2015 | 2/18/2015 | $2,045.00 | $2,045 x .09 x (1,206/365) | $608.12 |
| | | | | Total: | $7,270.03 |

This Court further recommends that the Clerk of Court calculate additional prejudgment interest at the rate of nine percent per annum from June 8, 2018 to the date that judgment is entered. Accordingly, this Court recommends that Monteroso be awarded prejudgment interest of $7,270.03, plus additional prejudgment interest as calculated by the Clerk of Court, from June 8, 2018 to the date final judgment is entered.

Monteroso also seeks statutory damages for Defendants' failure to provide both wage statements and wage notices in violation of the WTPA, in the amount of $2,500 for wage statement violations and $2,500 for wage notice violations.  (*See* Proposed Findings ¶ 26.)  With respect to damages for wage statement violations, this Court's calculation yields a higher damages amount than Plaintiffs' calculation, presumably because Plaintiffs did not take into account the increased damages cap that became effective on February 27, 2015, while Monteroso was still employed by Defendants.  (*See* Discussion, *supra* at Section I(G).)  Taking into account that cap increase entitles Monteroso to damages of $3,750 for wage statement violations. [7]  With

---

[7] As is stated in Monteroso's Declaration and detailed in the Damages Chart, Monteroso was employed by Defendants for a total of 35 weeks during two separate periods.  (*See* Monteroso Decl. ¶ 5; Damages Chart.)  For his initial 31-week period of employment – June 15,

respect to damages for wage notice violations, this Court also disagrees with Plaintiffs'

calculation of $2,500, and finds that Monteroso should instead be awarded $1,950, comprised of

$1,700 for the 34 weeks he worked prior to the February 27, 2015 penalty increase, and $250 for

the five days he worked after the increase went into effect.  (*See* Monteroso Decl. ¶ 5; Damages

Chart.)

   For the same reason that Cocoletzi is entitled to a greater liquidated damages amount than

was requested in Plaintiffs' Proposed Findings, this Court finds that Monteroso's combined

award of $5,700 in total statutory damages for Defendants' WTPA violations is not precluded by

Rule 54(c), notwithstanding the fact that this amount exceeds the amount requested.  Prior to

Defendants' default, Plaintiffs put them on notice, via the ad damnum clause of the Amended

Complaint, that Plaintiffs would seek "damages for Defendants' violation of the NYLL notice

and recordkeeping provisions."  (Am. Compl., at 29.)  Even without pleading the resulting

damages in a sum certain, this was sufficient to entitle Monteroso to damages for the claimed

violations, properly calculated under the law.  *See Am. Jewish Comm. v. Berman*, No. 15cv5983

(LAK) (JLC), 2016 WL 3365313, at *4 (S.D.N.Y. June 15, 2016) ("courts may award damages

in the absence of an ad damnum clause articulating a sum certain, so long as those damages do

not depart from the type of relief sought in the complaint (quotations and citation omitted)),

*report and recommendation adopted*, 2016 WL 4532201 (Aug. 29, 2016).  Accordingly, this

---

2011 to January 15, 2012 – Monteroso is entitled to the maximum statutory damages award of
$2,500 for failure to provide wage statements.  While damages for the first three weeks
Monteroso worked during his second period of employment – February 5, 2015 to March 3,
2015 – are also subject to the pre-February 27, 2015 cap, damages for the five days worked after
the WTPA penalties increased, amounting to $1,250, are not subject to the earlier cap.
Accordingly, Monteroso is entitled to $3,750 (*i.e.*, the sum of $2,500 plus $1,250) for the
claimed wage statement violations.

Court recommends that Monteroso be awarded a total of $5,700 in statutory damages for Defendants' WTPA violations.

Monteroso also seeks damages for the amounts he expended for tools-of-the-trade, consisting of the cost of two bicycles, one of which allegedly cost $800 and the other, $500. (Monteroso Decl. ¶ 17; Proposed Findings ¶ 9.) This Court may accept Monteroso's statement, made under penalty of perjury, that he made these purchases as a requirement of his employment and that the costs were the amounts stated. As with Cocoletzi's claim, however, this Court has no basis for recommending that Monteroso be reimbursed for two bicycles in the absence of any showing that he needed to purchase more than one bicycle to perform his assigned job. Monteroso has not explained in his Declaration that, for some reason, the first bicycle he purchased could no longer be used at some point during his employment, necessitating his purchase of a second bicycle. In the absence of such a showing, this Court recommends that Monteroso be awarded the cost of one bicycle – the higher stated amount of $800 – in tools-of-the-trade damages.

Overall, this Court recommends that Monteroso be awarded a total of $32,708.50 in damages, plus $7,270.03 in prejudgment interest, with additional prejudgment interest to the date of final judgment to be calculated by the Clerk of Court.

      C.      **Plaintiff Gilberto Dario Ramirez Ramos**

      1.      **Facts**

As set out in the Amended Complaint and the Ramirez Declaration, Ramirez alleges that he worked for Defendants from approximately August 2014 to March 21, 2015, at the Second Avenue Location. (Am. Compl. ¶ 77; Ramirez Decl. ¶¶ 2, 5.) Like his co-plaintiffs, Ramirez claims that, although he was ostensibly employed as a delivery worker, he spent over two hours

per work day performing non-tipped, non-delivery duties.  (Am. Compl. ¶ 80; Ramirez Decl.

¶ 6.)  He alleges that, from August 2014 to October 2014, he worked 13 or 13.5 hours per day,

six days per week, for a total of 79.5 hours per week.  (Am. Compl. ¶ 84; Ramirez Decl. ¶ 9.) [8]

He further alleges that, from October 2014 to March 21, 2015, he worked nine hours per day one

day of each week, and 11 hours per day five days of each week, for a total of 64 hours per week.

(Am. Compl. ¶ 85; Ramirez Decl. ¶ 10.)  Ramirez alleges that he was never given any breaks.

(Am. Compl. ¶ 88; Ramirez Decl. ¶ 14.)

     Ramirez claims that, throughout his employment, he was paid $5.00 per hour (Am.

Compl. ¶ 87; Ramirez Decl. ¶ 12), in cash (Am. Compl. ¶ 86; Ramirez Decl. ¶ 11).  He asserts

that he "was never notified . . . that his tips were being included as an offset for wages" and that

"Defendants did not account for these tips in any daily or weekly accounting" of his wages.

(Am. Compl. ¶¶ 89-90; *see* Ramirez Decl. ¶ 15.)  Like his co-plaintiffs, Ramirez further contends

that he was never notified, in English or in Spanish (his primary language), of his rate of pay or

his employer's regular pay day, and that Defendants did not post notices or otherwise notify him

"regarding overtime and wages under the FLSA and NYLL."  (Am. Compl. ¶¶ 92-93; Ramirez

Decl. ¶¶ 16-17.)  Ramirez also states that he was required to purchase, as tools-of-the-trade, two

bicycles, one for $800 and the other for $500.  (Ramirez Decl. ¶ 18.) [9]

---

    [8] While the Amended Complaint states that Ramirez worked for 78 to 81 hours per week, Plaintiffs use the average of these numbers, 79.50, in the Damages Chart, and this Court will likewise use this average in its calculations.

    [9] This Court notes that Ramirez's statement in his Declaration regarding his tools-of-the-trade expenses is contradicted by the Amended Complaint, which alleges that Ramirez was required to purchase one bicycle for $200, one helmet for $50, one basket for $60, and $50 worth of bicycle lights, and spend $500 on bicycle repairs.  (Am. Compl. ¶ 94.)  Although this Court suspects that Ramirez's statement in his Declaration as to his tools-of-the-trade expenses may represent a scrivener's error by counsel in the preparation of the document (given that the statement is identical to a statement in Monteroso's Declaration regarding *Monteroso's* tools-of-the-trade expenses), this Court will nonetheless accept the representations contained in

2.    **Damages**

This Court finds Ramirez's submissions sufficient to establish that he was not paid

minimum wage, overtime, and spread-of hours pay as required by law.  Given that he was not

notified that his tips would be credited toward the minimum wage, and his non-tipped duties

exceeded two hours of each work day, he was entitled to be paid the statutory minimum wage,

which was $8.00 per hour at the beginning of his employment and which increased to $8.75 per

hour on January 1, 2015.  He was also entitled to be paid 150 percent of the statutory minimum

wage for the hours he worked above 40 hours per week.  Instead, Ramirez alleges that he was

paid only $5.00 per hour, for every hour worked.  Given that Ramirez was paid below the

statutory minimum wage throughout his employment, he has demonstrated a valid minimum-

wage claim.  Moreover, because he was not paid 150 percent of the minimum wage for overtime

and was not paid spread-of-hours pay, he has also established claims for damages for overtime

and spread-of-hours compensation.  After reviewing the Damages Chart, this Court finds the

calculations for Ramirez's unpaid wages and overtime to be correct, and recommends that he be

awarded $10,531.50 in damages for those claims.  Additionally, he should be awarded $1,353.25

in damages for unpaid spread-of-hours compensation.

Ramirez also seeks liquidated damages under the NYLL.  (Proposed Damages ¶ 30.)

Given that his employment with Defendants began after April 9, 2011, he is entitled to liquidated

damages in an amount equal to 100 percent of his unpaid wage, overtime, and spread-of-hours

---

Ramirez's Declaration – which was signed under penalty of perjury – over the non-evidentiary
allegations of Plaintiffs' pleading.  This Court also notes that accepting the statement made in the
Declaration, instead of the one made in the Amended Complaint, would result in a slightly lower
award for Ramirez for tools-of-the-trade damages ($800, for the reasons discussed *infra*, rather
than $860), and finds that, in light of the presented inconsistency, it would be appropriate to
award the lower amount.

damages.  *See* N.Y. Lab. Law § 663(1).  Therefore, this Court recommends that Ramirez be awarded $11,884.75 in liquidated damages.

Ramirez also seeks prejudgment interest, at the rate of nine percent per annum, on his awards for unpaid minimum and overtime wages and spread-of-hours compensation, together constituting a principal amount of $11,884.75.  (*See* Proposed Findings ¶¶ 33, 36.)  Plaintiffs propose using December 2, 2014, the midpoint date of Ramirez's employment (Proposed Findings ¶ 36), as a reasonable intermediate date from which to compute prejudgment interest, given that damages were incurred at various times.  This Court agrees, and therefore recommends that Ramirez be awarded prejudgment interest of nine percent on the amount of $11,844.75 from the date of December 2, 2014 up to the date of Plaintiffs' inquest submissions (June 8, 2018).  This results in an award of prejudgment interest of $3,762.74 ($11,884.75 x .09 x (1,284/365)).  This Court further recommends that the Clerk of Court calculate additional prejudgment interest on Ramirez's damages award at the rate of nine percent per annum from June 8, 2018 to the date that final judgment is entered.

Ramirez also seeks statutory damages for Defendants' failure to provide wage statements and wage notices in violation of the WTPA, and specifically claims $2,500 for wage statement violations and $2,500 for wage notice violations.  (Proposed Findings ¶ 26.)  With respect to damages for wage statement violations, similar to this Court's analysis of Monteroso's damages, this Court's calculation actually yielded a higher damages amount than Plaintiffs' submitted calculation, presumably because Plaintiffs did not take into account the increased damages cap that became effective on February 27, 2015, while Ramirez was still employed by Defendants. (*See* Discussion, *supra* at Section I(G).)  By taking that cap increase into account, this Court's calculation of Ramirez's damages for wage statement violations yields the maximum statutory

award of $5,000. [10]  With respect to damages for wage notice violations, this Court disagrees

with Plaintiffs' calculation, and finds that Ramirez should instead be awarded $2,350, which is

comprised of $1,400 for the 28 weeks he worked prior to the February 27, 2015 penalty increase,

and $950 for the 19 days he worked thereafter.  (*See* Raimrez Decl. ¶¶ 9-10; Damages Chart.)

Ramirez's total damages award for WTPA violations, according to this Court's calculations,

therefore amounts to $7,350.  While this amount exceeds Plaintiffs' proposed damages award for

such violations, the Court is not precluded by Rule 54(c) from awarding Ramirez the higher sum,

given that Plaintiffs, in their pleadings, put Defendants on notice prior to their default that they

would seek damages for WTPA violations.  Therefore, this Court recommends that Ramirez be

awarded $7,350 in statutory damages for Defendants' WTPA violations.

Ramirez also seeks damages for the amounts he expended for tools-of-the-trade,

including the cost of two bicycles, one of which allegedly cost $800 and the other, $500.

(Ramirez Decl. ¶ 18.)  This Court may accept Ramirez's statement, made under penalty of

perjury, that he made these purchases as a requirement of his employment and that the costs were

the amounts stated.  As with Cocoletzi's and Monteroso's claims, however, in the absence of any

showing that he needed to purchase more than one bicycle to perform his assigned job, this Court

does not have a basis for recommending that Ramirez be reimbursed for two bicycles.  Ramirez

has not explained in his Declaration that, for some reason, the first bicycle he purchased could no

longer be used at some point during his employment, necessitating his purchase of a second

---

[10] As is stated in the Ramirez Declaration and detailed in the Damages Chart, Ramirez
was employed by Defendants for 28 weeks prior to the February 27, 2015 penalty increase, and
for 19 days thereafter.  (*See* Ramirez Decl. ¶¶ 9-10; Damages Chart.)  Given that his damages for
wage statement violations reached the $2,500 penalty cap for the pre-February 27, 2015 period,
and that his damages for wage statement violations subsequent to the penalty increase also
reached $2,500, Ramirez is entitled to $5,000 in such damages, in accordance with the post-
February 27, 2015 cap.

bicycle.  In the absence of such a showing, this Court recommends that Ramirez be awarded the

cost of one bicycle – the higher stated amount of $800 – in tools-of-the-trade damages.

In total, this Court recommends that Ramirez be awarded $31,919.50 in damages, plus

$3,762.74 in prejudgment interest, with additional prejudgment interest to be calculated by the

Clerk of Court.

### D.      Plaintiff Cristian Fredy Villar Medina

#### 1.      Facts

As set out in the Amended Complaint and the Villar Declaration, Villar alleges that he

worked for Defendants from approximately July 18, 2011 to June 2014, at the Second Avenue

Location.  (Am. Compl. ¶ 95; Villar Decl. ¶¶ 2, 5.)  Like the other plaintiffs, Villar claims that,

although he was ostensibly employed as a delivery worker, he spent over two hours per work day

performing non-tipped, non-delivery duties.  (Am. Compl. ¶¶ 96-98; Villar Decl. ¶ 6.)  He

alleges that he worked 13 hours one day per week, 13.5 hours two days per week, and 14 hours

three days per week, for a total of 82 hours per week.[11]  (Villar Decl. ¶ 9.)  He also alleges that

he was never given any breaks.[12]  (Villar Decl. ¶ 14.)

Villar claims that, throughout his employment, he was paid $5.00 per hour, in cash, and

that he was not provided with a statement of wages when he was paid.  (Am. Compl. ¶¶ 103,

104, 108; Villar Decl. ¶ 10-11, 15.)  He claims that he "was never notified . . . that his tips were

---

[11] This Court notes that Plaintiffs allege in the Amended Complaint that Villar worked
82.5 hours per week.  (Am. Compl. ¶ 102.)  This Court, however, defers to Villar's own
Declaration, which, consistent with Plaintiffs' calculations of Villar's damages in the Damages
Chart, states that Villar worked 82 hours per week.  (Villar Decl. ¶ 9; Damages Chart.)

[12] This Court notes that Plaintiffs allege in the Amended Complaint that Villar, despite
being given a 30-minute lunch break, was only able to take that break approximately three times
per week.  (Am. Compl. ¶ 105.)  This Court again defers to Villar's own Declaration, which
states, as noted above, that he was never given any breaks.  (Villar Decl. ¶ 14.)

being included as an offset for wages" and that "Defendants did not account for these tips in any

daily or weekly accounting" of his wages.  (Am. Compl. ¶¶ 106-07; *see* Villar Decl. ¶ 14.)

Additionally, like his co-plaintiffs, Villar alleges that he was never notified, in English or in

Spanish (his primary language), of his rate of pay or his employer's regular pay day, and that

Defendants did not post notices or otherwise notify him "regarding overtime and wages under

the FLSA and NYLL."  (Am. Compl. ¶¶ 109-110; *see* Villar Decl. ¶ 16.)  Villar also claims that

he was required to purchase, as tools-of-the-trade, three bicycles for $300 each, and that he spent

approximately $2,000 on bicycle supplies and $1,000 on "work clothes."  (Am. Compl. ¶ 111;

Villar Decl. ¶ 13.) [13]

> ## 2.   Damages

This Court finds Villar's submissions sufficient to establish that he was not paid

minimum wage, overtime, and spread-of-hours pay in accordance with relevant law.  Given that

he was not notified that his tips would be credited toward the minimum wage, and his non-tipped

duties exceeded two hours of each work day, he was entitled to be paid the statutory minimum

wage, which was $7.25 per hour at the start of his employment and increased to $8.00 per hour

on December 31, 2013.  He was also entitled to be paid 150 percent of the statutory minimum

wage for the hours he worked above 40 hours per week.  Villar has demonstrated a valid

minimum-wage claim because he was paid only $5.00 per hour for all hours worked, which was

below the statutory minimum wage, throughout his employment.  Moreover, as he was not paid

150 percent of the minimum wage for overtime and was not paid spread-of-hours pay, he has

also established claims for damages for overtime and spread-of-hours compensation.  After

---

[13] In his Declaration, Villar does not mention the $1,000 amount spent on work clothes (*see* Villar Decl.), even though that amount is incorporated into Plaintiffs' Damages Chart, for damages sought for tools-of-the-trade expenses (*see* Damages Chart).

reviewing the Damages Chart, this Court finds the calculations for Villar's unpaid wages and overtime to be correct, and recommends that he be awarded $53,040 in damages for those claims.  Additionally, he should be awarded $6,720 in damages for unpaid spread-of-hours compensation.

Villar also seeks liquidated damages under the NYLL.  (Proposed Findings ¶ 31.)  Given that his employment with Defendants began after April 9, 2011, he is entitled to liquidated damages in an amount equal to 100 percent of his unpaid wage, overtime, and spread-of-hours damages.  *See* N.Y. Lab. Law § 663(1).  Therefore, this Court recommends that Villar be awarded $59,760 in liquidated damages.

Villar also seeks prejudgment interest, at the rate of nine percent per annum, on his awards for unpaid minimum and overtime wages, as well as unpaid spread-of-hours compensation, which together constitute a principal amount of $59,760.  (*See* Proposed Findings ¶¶ 33, 38.)  Given that Villar's damages were incurred at various times, Plaintiffs have proposed that this Court use December 20, 2012, the midpoint of Villar's employment, as a reasonable intermediate date from which to calculate prejudgment interest on those damages.  (Proposed Findings ¶ 38.)  This Court agrees with Plaintiffs' proposed approach, and therefore recommends that Villar be awarded prejudgment interest of nine percent on the amount of $59,760 from the date of December 20, 2012 up to the date of Plaintiffs' inquest submissions (June 8, 2018).  This results in an amount of $29,411.74 ($59,760 x .09 x (1,996/365)).  As with the other Plaintiffs, this Court further recommends that the Clerk of Court calculate additional prejudgment interest at the rate of nine percent per annum from June 8, 2018 to the date that final judgment is entered.

Villar also seeks statutory damages for Defendants' failure to provide wage statements and wage notices in violation of the WTPA.  (Proposed Findings ¶ 26.)  As Villar was employed

44

by Defendants for 151 weeks prior to the February 27, 2015 WTPA amendments (*see* Villar Decl. ¶ 5, Damages Chart), he is entitled to the statutory maximum of $2,500 for failure to provide wage statements, and the statutory maximum of $2,500 for failure to provide wage notices.  Therefore, this Court recommends that Villar be awarded $5,000 in WTPA statutory damages.

Villar also seeks damages for tools-of-the-trade expenses, which, Plaintiffs contend, amounted to $3,900, consisting of the cost of three bicycles, bicycle supplies, and work clothes. (*See* Am. Compl. ¶ 111; Villar Decl. ¶ 13; Proposed Findings ¶ 17.)  With regard to the bicycles and bicycle supplies, this Court accepts that Villar made these purchases as a requirement of his employment, and that the costs were the amounts stated, given his statement, made under penalty of perjury, as to those costs.  As with Cocoletzi, Monteroso, and Ramirez, however, this Court has no basis for recommending that Villar be reimbursed for three bicycles, in the absence of any showing that he needed to acquire multiple bicycles to perform his assigned job.  With regard to the work clothes, Villar has not only omitted this from his Declaration, but, even in the Amended Complaint, he has not pleaded any facts that suggest that the clothes he allegedly purchased could not have been "worn as part of [his] ordinary wardrobe," *see* 12 N.Y.C.R.R. § 146-3.10, or that the clothing was "specifically required for the performance of the employer's particular work," 29 C.F.R. § 531.35.  Accordingly, this Court finds that there is an insufficient basis in the record for awarding Villar the amount he spent on "work clothes."  Therefore, this Court recommends that Villar be awarded the cost of one bicycle ($300) and the cost of bicycle supplies ($2,000), for a total of $2,300 in damages for tools-of-the-trade expenses.

In total, this Court recommends that Villar be awarded $126,820 in damages, plus $29,411.74 in prejudgment interest, with additional prejudgment interest to be calculated by the Clerk of Court.

### E.     Plaintiff German Torres

#### 1.     Facts

As set out in the Torres Declaration, Torres alleges that he worked for Defendants from August 5, 2010 until November 2013, at the Second Avenue Location.  (Torres Decl. ¶¶ 2, 5.) [14] Like the other plaintiffs, Torres claims that, although he was ostensibly employed as a delivery worker, he spent over two hours per work day performing non-tipped, non-delivery duties.  (Am. Compl. ¶¶ 113-15; Torres Decl. ¶ 6.)  He alleges that, throughout his employment, he worked 13 hours per day, two days of the week, 11 hours per day, one day of the week, and 12 hours per day, three days of the week, for a total of 73 hours per week.  (Torres Decl. ¶ 9.) [15]  Torres further alleges that he was never given any breaks.  (Am. Compl. ¶ 112; Torres Decl. ¶ 13.)

Torres claims that, throughout his employment, he was paid $5.00 per hour, in cash, and that he was not provided with a statement of wages when he was paid.  (Am. Compl. ¶¶ 104, 120, 125; Torres Decl. ¶¶ 10-11, 15.)  He alleges that he "was never notified . . . that his tips were being included as an offset for wages" and that "Defendants did not account for these tips

---

[14] This Court notes that Torres' Declaration is contradicted both by the Amended Complaint, which alleges that Torres was employed from approximately April 2010 to November 2013 (Am. Compl. ¶ 112), and by the Damages Chart, which states that Torres was employed from January 1, 2010 to November 15, 2013 (Damages Chart).  This Court defers to Torres' own Declaration, and will therefore calculate Torres' recovery using an employment period of August 5, 2010 to November 15, 2013.

[15] The summary of Torres' weekly working schedule, as reflected in his Declaration, is contradicted both by the Amended Complaint, which alleges that he worked 73.5 hours per week (Am. Compl. ¶ 119), and by the Damages Chart, which reflects that he worked 75 hours per week (Damages Chart).  This Court again defers to Torres' Declaration, and will therefore accept that Torres worked 73 hours per week in calculating Torres' damages.

in any daily or weekly accounting" of his wages.  (Am. Compl. ¶¶ 123-24; Torres Decl. ¶ 14.)

Additionally, he contends that he was never notified, in English or in Spanish (his primary

language), of his rate of pay or his employer's regular pay day, and that Defendants did not post

notices or otherwise notify him "regarding overtime and wages under the FLSA and NYLL."

(Am. Compl. ¶¶ 126-27; Torres Decl. ¶ 16.)  Torres also claims that he was required to purchase,

as tools-of-the-trade, one bicycle for approximately $350,[16] and that he spent approximately

$1,000 on bike supplies and maintenance.  (Am. Compl. ¶ 128; Torres Decl. ¶ 17.)

## 2.   **Damages**

This Court finds Torres' submissions sufficient to establish that he was not paid

minimum wage, overtime, and spread-of-hours pay as required by law.  As he was not notified

that his tips would be credited toward the minimum wage, and his non-tipped duties exceeded

two hours of each work day, he was entitled to be paid the statutory minimum wage, which was

$7.25 per hour throughout his employment.  He was also entitled to be paid 150 percent of the

statutory minimum wage for the hours he worked above 40 hours per week.  Given that Torres

was paid only $5.00 per hour for all hours worked, throughout his employment, which is below

the minimum wage, this Court finds that Torres has demonstrated a valid minimum-wage claim.

Moreover, because he was not paid 150 percent of the minimum wage for overtime and was not

paid spread-of-hours pay, he has additionally established claims for damages for overtime and

spread-of-hours compensation.

After adjusting the calculations in the Damages Chart to reflect a period of employment

of August 5, 2010 to November 15, 2013 and a 73 hour work week (*see* nn.14 & 15), this Court

---

[16] This Court notes that, while the Amended Complaint alleges that Torres purchased
three bicycles for a total of $1,500 (Am. Compl. ¶ 128), Torres states in his Declaration that he
purchased one bicycle for $350 (Torres Decl. ¶ 17), and this Court accepts that statement here.

finds, and recommends, that Torres should be awarded $48,622.59 in unpaid wages and overtime. In addition, after adjusting Plaintiffs' spread-of-hours calculation to reflect that Torres worked a total of 1,028 days for which Defendants did not provide him spread-of-hours compensation, this Court finds, and recommends, that Torres should be awarded $7,453 in damages for unpaid spread-of-hours compensation.

Torres also seeks, and has demonstrated that he is entitled to, liquidated damages under the NYLL (*see* Proposed Findings ¶ 32), in the amount of 25 percent of his minimum wage, overtime, and spread-of-hours damages for his employment prior to April 9, 2011, and 100 percent of such damages incurred thereafter, *see* N.Y. Lab. Law § 663(1). Based on this Court's calculation of Torres' pre-April 9, 2011 damages as $11,530.15, and his damages for the period from April 9, 2011 forward as $44,545.44, this Court recommends that Torres be awarded liquidated damages in the amount of $2,882.54 for his employment through April 8, 2011, and $44,545.44 for the period thereafter, which amounts to $47,427.98 in total liquidated damages.

Torres also seeks prejudgment interest at the rate of nine percent per annum on his awards for unpaid minimum wages, unpaid overtime wages and unpaid spread-of-hours compensation, which together constitute a principal amount of $56,075.59. (*See* Proposed Findings ¶¶ 33, 37.) Plaintiffs have proposed using December 9, 2011 as an intermediate date from which to calculate prejudgment interest (*see id*. ¶ 37), which this Court suspects was based on an inaccurate understanding of Torres' period of employment, as reflected in the Damages Chart. This Court instead uses the date of March 26, 2012 as the midpoint date of Torres' period of employment. This Court therefore recommends that Torres be awarded prejudgment interest of nine percent on the amount of $56,075.59 from the date of March 26, 2012 up to the date of Plaintiffs' inquest submissions (June 8, 2018), which results in $31,317.83 ($56,075.59 x .09 x

(2,265/365)).  As with the other Plaintiffs, this Court further recommends that the Clerk of Court calculate additional prejudgment interest at the rate of nine percent per annum from June 8, 2018 to the date that final judgment is entered.

Torres also seeks statutory damages for failure to provide wage statements in violation of the WTPA.  (*See id.* ¶ 26.)  Given that Torres worked for more than 25 weeks between April 9, 2011 and February 26, 2015 (*see* Torres Decl. ¶ 5; Damages Chart), he is entitled to the statutory maximum of $2,500 in damages for wage statement violations.[17]

Torres also seeks damages for tools-of-the-trade expenses in the amount of $1,350, including the cost of one bicycle and of unspecified bicycle supplies and maintenance.  (*See* Proposed Findings ¶ 21; Torres Decl. ¶ 17.)  This Court may accept Torres's statement, made under penalty of perjury, that he made these purchases as a requirement of his employment and that the costs were the amounts stated.  Therefore, this Court recommends that Torres be awarded the cost of one bicycle ($350) and the cost of bicycle supplies and maintenance ($1,000), for a total of $1,350 in tools-of-the-trade damages.

Overall, this Court recommends that Torres be awarded $116,488.60 in damages, plus $31,317.83 in prejudgment interest, with additional prejudgment interest to the date of final judgment to be calculated by the Clerk of Court.

### F.    <u>Joint and Several Liability</u>

Plaintiffs request that Defendants be held jointly and severally liable for the damages owed to Plaintiffs in this action.  (*See* Am. Compl. ¶¶ 26-35 ("*Defendants Constitute Joint Employers*" (italics in original)).)  Under both the FLSA and the NYLL, "employers" – *i.e.*, those

---

[17] This Court notes that Torres is not seeking damages for failure to provide wage notices. (Proposed Findings ¶ 26.)

who "possessed the power to control the workers in question, . . . with an eye to the economic reality presented by the facts of each case," *Doo Nam Yang*, 427 F. Supp. 2d at 342 (internal quotation marks and citation omitted) – may be held liable for violations of each statute, *id.*  In this case, Plaintiffs' well-pleaded allegations are sufficient to support a finding that, while Plaintiffs were employed at various Fat Sal's Pizza locations, all Defendants had control over the "economic reality" of Plaintiffs' employment.

Specifically, Plaintiffs have alleged that Defendants had "the power to hire and fire" them (Am. Compl. ¶ 33), "controlled the terms and conditions of employment" (*id.*), and "determined the rate and method" of their compensation (*id.*).  Plaintiffs have also alleged that defendants Orly and Shaar not only possessed an "ownership interest" in the Corporate Defendants (*id.* ¶ 27), but also had "operational control" over the corporations (*id.*), and "substantial control" over Plaintiffs' working conditions (*id.* ¶ 29).  Taking these allegations as true upon Defendants' default, this Court recommends that all Defendants – Fat Sal's Pizza II, Corp., Fat Sal's Pizza III, Corp., Fat Sal's Pizza IV., Corp., Shelby Pizza Corp., Twelve Thirteen Ave A Corp., Orly, and Shaar – be found to have been employers of Plaintiffs, such that it would be appropriate for this Court to hold them jointly and severally liable for Plaintiffs' damages.

## III.   ATTORNEY'S FEES AND COSTS

Plaintiffs seek $48,092.50 in attorneys' fees for 118.45 hours of work performed by counsel in connection with this action, and litigation costs in the amount of $1,165.  (*See* Proposed Findings, Ex. B (Dkt. 118-2).)  For the reasons that follow, this Court recommends that Plaintiffs be awarded the reduced amounts of $40,492 in attorneys' fees and $400 in costs.

### A.   **Reasonable Hourly Rates**

Plaintiffs were represented in this action by attorneys Michael Faillace ("Faillace") and

Joshua Androphy ("Androphy"), of the law firm Michael Faillace & Associates, P.C. (the

"Faillace Firm").  (Proposed Findings ¶¶ 40-42.)  Faillace is the Managing Member of the

Faillace Firm, and has been practicing employment law since 1983.  (*See id*. ¶ 41.)  He has

taught employment-discrimination law as an adjunct professor at Fordham University School of

Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and Plaintiffs'

Proposed Findings describe him as a "nationally-renowned speaker and writer on employment

law."  (*Id.*)  He bills at a rate of $450 per hour.  (*Id.*)  Androphy has practiced litigation since

2005, and, since 2012, he has practiced employment law at the Faillace Firm, where he has

reportedly taken "lead responsibility on over a hundred FLSA litigations such as the instant, and

20 trials."  (*Id*. ¶ 42.)  He bills at a rate of $400 per hour.  (*Id.*)

This Court has previously recommended approval of an hourly rate of $450 for Faillace,

given his many years of experience in employment litigation, *see Almanzar v. 1342 St. Nicholas*

*Avenue Restaurant Corp.*, No. 14cv7850 (VEC) (DF), 2016 WL 8650464 at *19 (S.D.N.Y.,

Nov. 7, 2016), *report and recommendation adopted*, 2017 WL 1194682 (Mar. 30, 2017), and

finds it appropriate in this case, as well.  With respect to Androphy, while he has previously been

awarded his requested rate of $400 by at least one court in this District, *see Pineda v. Frisolino,*

*Inc.*, No. 15cv3774 (GBD) (BCM), 2018 WL 3628898, at *2 (S.D.N.Y. July 30, 2018) (adopting

report and recommendation), Androphy's requested rate has more frequently been reduced to

$350 by courts in this District in similar actions brought under the FLSA and the NYLL, *see,*

*e.g., Cabrera v. New York Fresh Meat Inc*., No. 15cv1325 (GBD) (SDA), 2018 WL 2192187 at

*3 (S.D.N.Y. May 14, 2018) (adopting report and recommendation); *Portillo v. New Ko-Sushi*

*Japanese Restaurant, Inc*., No. 16cv2429 (JMF), 2017 WL 3995602 at *1 (S.D.N.Y. Sept. 8,

2017); *Mendoza v. CGY & J Corp*., No. 15cv9181 (RA), 2017 WL 4685100, at *2 (S.D.N.Y.

Oct. 17, 2017).  Given that this Court has not been informed as to whether Androphy had any

specialized experience in employment law prior to becoming associated with the Faillace Firm,

and that he had been practicing with the Faillace Firm for, at most, three years when this action

was commenced, this Court agrees with the prevailing view in this District as to Androphy's

appropriate hourly rate, and therefore recommends that attorneys' fees for Androphy be awarded

at the rate of $350 per hour.

### B.   Reasonable Hours

Plaintiffs request attorneys' fees for 118.45 hours of work, comprised of 11.65 hours of

work by Faillace and 106.8 hours of work by Androphy.  In support of this request, Plaintiffs

have submitted attorney time records that appear to have maintained contemporaneously over the

course of the litigation.  (*See* Proposed Findings, Ex. B.)  While the number of hours claimed

seems, on its face, to be quite high for a default case, Plaintiffs note, and this Court agrees, that

"this is not a typical default situation where defendants never answered or appeared."  (Proposed

Findings ¶ 44.)  Rather, following Defendants' initial appearance (*see* Background, *supra*, at

Section II), Plaintiffs' counsel engaged in substantial discovery, including the taking and

defending of multiple depositions (*see* Proposed Findings ¶ 44).  Plaintiffs' counsel also worked

on Plaintiffs' behalf in connection with Orly's bankruptcy proceedings, specifically in filing a

motion with the Bankruptcy Court to lift its automatic stay on this litigation so to permit this

action to proceed against Orly.  (*See* Dkt. 21 ¶ 4; Dkt. 22 at 6.)  Therefore, this Court will assess

the reasonableness of hours in light of the more involved nature of this litigation.

The time records submitted by Plaintiffs generally reflect reasonable tasks that appear to have been performed within a reasonable amount of time.  Some descriptions, however, refer to individuals or tasks that this Court cannot immediately identify as being connected with this litigation.  For example, Faillace's time entry for September 2, 2016 reflects that he "discussed with FG the proper way to prepare client for deposition," without identifying "FG" for this Court.  (Proposed Findings, Ex. B, at 5.)  In addition, certain time entries by Androphy vaguely state that he performed "research," with little or no explanation as to the subject of such research, making it difficult for the Court to assess the reasonableness of the amount of time expended. *See D.J. ex rel. Roberts v. City of New York*, No. 11cv5458 (JGK) (DF), 2012 WL 5431034, at *7 (S.D.N.Y. Oct. 16, 2012) (noting that attorney time entries for "research," which fail to "describ[e] the issues for which research was required, are generally considered too vague to justify full recovery"), *report and recommendation adopted sub nom. Roberts v. City of New York*, 2012 WL 5429521 (Nov. 7, 2012).

Finally, it is of some concern that a fair number of counsel's time entries are "block billed" (*i.e.*, multiple tasks are clustered together in the same billing entry).  While the practice of block billing "is not prohibited in this Circuit," *Rodriguez v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999); *see also, e.g.*, *Hutchinson v. McCabee*, No. 95cv5449 (JFK), 2001 WL 930842, at *4 (S.D.N.Y. Aug. 15, 2001), it is difficult for the Court to evaluate whether the time spent on a given task was excessive where the attorney has grouped different tasks together in a single time entry.  Thus, at times, courts have reduced or even disallowed requested attorneys' fees where the supporting time records were not broken out with sufficient detail to enable the courts to determine the reasonableness of the time spent on particular tasks.  *See, e.g.*, *Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (affirming hours reduction for pervasive

block billing in time entries); *Bank v. Ho Seo*, No. 06cv15445 (LTS) (RLE), 2009 WL 5341672, at *5 (S.D.N.Y. Dec. 16, 2009) (reducing a fee award and noting that the process of combining "multiple tasks into one entry" blocks the court's "efforts to evaluate the reasonableness of any of the listed activities" (internal quotation marks and citation omitted)), *adopted as modified on other grounds*, 2010 WL 129681 (Jan. 13, 2010); *Soler v. G&U, Inc*., 801 F. Supp. 1056, 1061-62 (S.D.N.Y. 1992) (excluding from lodestar calculation all time entries with commingled activities).

Here, some of the block-billing issues are relatively minor, such as Androphy's time entry for January 26, 2017, which reflects that he spent 3.5 hours "research[ing] and draft[ing] letter re discovery dispute" (*id.*, at 6), but does not break out how much time he spent conducting research, and how much time he spent drafting. Even if this description seems fairly innocuous, though, this Court notes that the description makes it is difficult to assess the reasonableness of the time expended for the listed tasks, particularly the legal research. This Court has reviewed the January 26, 2017 letter to which Androphy was presumably referring (Dkt. 75), and notes that it cites only two cases, which stand for well-accepted principles regarding the availability of discovery sanctions. While it may have been reasonable for Androphy to have spent half an hour or so locating those cases, it may not have been reasonable for him to have spent two hours doing so, and thus, from the composite time entry, this Court cannot determine whether an excessive amount of time was spent on the identified research task. As another, more significant, example of block billing, this Court notes Androphy's time entry for September 9, 2016, which reflects that he billed 7.80 hours for the following tasks, with no time break downs: "attend and defend deposition; draft and file motion for leave to amend bankruptcy court adversary

proceeding complaint; pre[pa]re for Amir Orly deposition." (*Id.*, at 5.)  While it is possible that the total listed time was all reasonably spent, it is difficult for the Court to confirm this.

While, in light of counsel's time records as a whole, the billing issues described above are not extensive, this Court nonetheless recommends a five percent overall reduction in counsel's hours, in order to address them.  *See Carey*, 711 F.2d at 1142, 1146 (noting that a percentage reduction may be applied as a "practical means of trimming fat" from a fee application).  This would result in an overall reduction of counsel's time from 118.45 hours to 112.53 hours.

### C.      Lodestar Calculation

Using the reasonable rates and hours as described above results in the following lodestar calculation:

| Attorney | | Hourly Rate (as recommended by this Court) | Hours Billed (reduced by five percent) | Total |
|---|---|---|---|---|
| Faillace | | $450 | 11.07 | $4,981.50 |
| Androphy | | $350 | 101.46 | $35,511 |
| | | | | **Total:** $40,492 |

This Court finds no exceptional circumstances here that would warrant deviation from the lodestar, see *Perdue*, 559 U.S. at 552, and therefore recommends that Plaintiffs be awarded attorneys' fees in the amount of $40,492.

### D.      Costs

Plaintiffs additionally seek litigation costs, in the amount of $1,165, including a $400 filing fee, one $50 process-server fee, five $65 process-server fees, and $390 for fees associated with the deposition of Shaar.  (Proposed Findings, Ex. B, at 7-8.)  While this Court takes judicial notice of the filing fee and therefore finds it to be compensable, *see Guo v. Tommy's Sushi, Inc.*,

55

No. 14cv3964 (PAE), 2016 WL 452319, at *7 (S.D.N.Y. Feb 5, 2016), this Court does not

recommend that the additional stated fees be awarded.  Apart from its own invoice itemizing

these fees, the Faillace Firm has failed to submit any underlying documentation supporting that

the fees were incurred.  It is Plaintiffs' burden to demonstrate that the litigation costs sought

were reasonably incurred and are properly recoverable from the defaulting Defendants, and, in

the absence of supporting documentation concerning the requested process-server and deposition

fees, Plaintiffs have not met their burden with respect to those litigation costs.  *Pastor*, 2017 WL

5625556, at *9 (declining to award process-server fees where the plaintiff failed to submit

underlying documentation from its counsel (the Faillace Firm), supporting that the fees were

incurred).  This Court therefore recommends that only $400 in costs be awarded.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that upon their default,

Defendants Fat Sal's Pizza II, Corp. (d/b/a Fat Sal's Pizza), Fat Sal's Pizza III, Corp. (d/b/a Fat

Sal's Pizza), Fat Sal's Pizza IV, Corp. (d/b/a/ Fat Sal's Pizza), Shelby Pizza Corp. (d/b/a Fat

Sal's Pizza), Twelve Thirteen Ave A Corp. (d/b/a Fat Sal's Pizza), Amir Orly, and Eldad Shaar

be held jointly and severally liable for damages and prejudgment interest in the following

amounts:

**Plaintiff Cocoletzi**

1.  Damages in the amount of $186,920.69, representing:

    a.  $95,147 in unpaid wages and overtime;

    b.  $13,057.75 in unpaid spread-of-hours compensation;

    c.  $74,835.94 in liquidated damages under the NYLL;

    d.  $2,500 in statutory damages under the NYLL; and

     e.  $1,380 in tools-of-the-trade damages.

2.  Prejudgment interest in the amount of

     a.  $60,324.89 up to June 8, 2018 (the date that Plaintiffs filed their inquest submissions); and

     b.  additional prejudgment interest at the rate of nine percent per annum, to be calculated by the Clerk of Court from June 8, 2018 to the date of entry of final judgment.

**Plaintiff Monteroso**

1.  Damages in the amount of $32,708.50, representing:

     a.  $11,545.75 in unpaid wages and overtime;

     b.  $1,558.50 in unpaid spread-of-hours compensation;

     c.  $13,104.25 in liquidated damages under the NYLL;

     d.  $5,700 in statutory damages under the NYLL; and

     e.  $800 in tools-of-the-trade damages.

2.  Prejudgment interest in the amount of:

     a.  $7,270.03 up to June 8, 2018 (the date that Plaintiffs filed their inquest submissions); and

     b.  additional prejudgment interest at the rate of nine percent per annum on the principal amount of $13,104.25, to be calculated by the Clerk of Court from June 8, 2018 to the date of entry of final judgment.

**Plaintiff Ramirez**

1.  Damages in the amount of $31,919.50, representing:

     a.  $10,531.50 in unpaid wages and overtime;

     b.  $1,353.25 in unpaid spread-of-hours compensation;

     c.  $11,884.75 in liquidated damages under the NYLL;

     d.  $7,350 in statutory damages under the NYLL; and

     e.  $800 in tools-of-the-trade damages.

2. Prejudgment interest in the amount of:

    a. $3,762.74 up to June 8, 2018 (the date that Plaintiffs filed their inquest submissions); and

    b. additional prejudgment interest at the rate of nine percent per annum on the principal amount of $11,884.75, to be calculated by the Clerk of Court from June 8, 2018 to the date of entry of final judgment.

## Plaintiff Villar

1. Damages in the amount of $126,820, representing:

    a. $53,040 in unpaid wages and overtime;

    b. $6,720 in unpaid spread-of-hours compensation;

    c. $59,760 in liquidated damages under the NYLL;

    d. $5,000 in statutory damages under the NYLL; and

    e. $2,300 in tools-of-the-trade damages.

2. Prejudgment interest in the amount of:

    a. $29,411.74 up to June 8, 2018 (the date that Plaintiffs filed their inquest submissions);

    b. and additional prejudgment interest at the rate of nine percent per annum on the principal amount of $59,760, to be calculated by the Clerk of Court from June 8, 2018 to the date of entry of final judgment.

## Plaintiff Torres

1. Damages in the amount of $116,488.60, representing:

    a. $56,423.62 in unpaid wages and overtime;

    b. $8,787 in unpaid spread-of-hours compensation;

    c. $47,427.98 in liquidated damages under the NYLL;

    d. $2,500 in statutory damages under the NYLL; and

    e. $1,350 in tools-of-the-trade damages.

2. Prejudgment interest in the amount of:

a.  $31,317.83 up to June 8, 2018 (the date that Plaintiffs filed their inquest submissions); and

b.  additional prejudgment interest at the rate of nine percent per annum on the principal amount of $65,210.62, to be calculated by the Clerk of Court from June 8, 2018 to the date of entry of final judgment.

Additionally, this Court recommends that Plaintiffs be awarded attorney's fees in the amount of $40,492, and costs in the amount of $400.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections. See also Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail).

Such objections, and any responses to objections, shall be filed with the Clerk of Court, with

courtesy copies delivered to the chambers of the Honorable Colleen McMahon, United States

Courthouse, 500 Pearl Street, Room 2550, New York, New York, 10007, and to the chambers of

the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York

10007. Any requests for an extension of time for filing objections must be directed to Judge

McMahon. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL

RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.

*See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d

1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v.

Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d

Cir. 1983).

Dated: New York, New York
       December 6, 2018

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

60

<u>Copies to</u>:

The Honorable Colleen McMahon, U.S.D.J.

Plaintiffs' Counsel (via ECF)

Amir Orly's Counsel (via ECF)

Mr. Eldad Shaar
525 E. 14th St., Apt. 2D
New York, NY 10009

Fat Sal's Pizza II Corp
510 9th Avenue
New York, NY 10018

Fat Sal's Pizza III Corp.
217 West 14th Street
New York, NY 10011

Fat Sal's Pizza IV, Corp.
1603 2nd Avenue
New York, NY 10028

Shelby Pizza Corp.
1603 2nd Avenue
New York, NY 10028

Twelve Thirteen Ave A Corp.
201 Avenue A
New York, NY 10009